164 F.3d 1015
 83 A.F.T.R.2d 99-422, 99-1 USTC P 50,194,
22 Employee Benefits Cas. 2297,
Pens. Plan Guide (CCH) P 23,951A
 Robert E. GERBEC and Elizabeth W. Gerbec (97-3224/3269);
Raymond E. Morgan and Jennifer L. Morgan
(97-3225/3269),
Plaintiffs-Appellants/Cross-Appellees,
v.
UNITED STATES of America, Defendant-Appellee/Cross-Appellant
(97-3269).
 Nos. 97-3224, 97-3225 and 97-3269.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 16, 1998.
Decided Jan. 15, 1999.
 
 Richard A. Cordray, Grove City, OH, K. Peter Schmidt (briefed), Arnold & Porter, Stephen L. Hester (argued and briefed), Washington, DC, for Plaintiffs-Appellants/Cross-Appellees.
 Michael W. Davis, U.S. Department of Justice, Tax Division, Kenneth L. Greene (briefed), Kenneth W. Rosenberg (argued and briefed), U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, Brenda L. Dodrill, Office of the U.S. Attorney, Columbus, OH, for Defendant-Appellee/Cross-Appellant in Nos. 97-3224 and 97-3225.
 Kenneth W. Rosenberg (argued and briefed), U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for Defendant-Appellee/Cross-Appellant in No. 97-3269.
 Before: WELLFORD, MOORE, and CLAY, Circuit Judges.
 CLAY, J., delivered the opinion of the court, in which MOORE, J., joined. WELLFORD, J. (pp. 1027-29), delivered a separate dissenting opinion.
 OPINION
 CLAY, Circuit Judge.
 
 
 1
 In this case of first impression in this Circuit, we are asked to decide whether settlement proceeds paid to members of a class action suit by their former employer for its violation of § 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, are subject to taxation as "income" or are exempt under Internal Revenue Code ("IRC") § 104(a)(2) as proceeds from a tort or "tort type" remedy; as well as whether these proceeds are subject to Federal Insurance Contributions Act ("FICA") taxes under 26 U.S.C. § 3101 et seq. To the extent set forth below, we find that the proceeds are exempt from income taxation under IRC § 104(a)(2), and are not subject to FICA taxation under 26 U.S.C. § 3101 et seq.
 
 I.
 Background
 
 2
 Plaintiffs, Robert E. Gerbec and Raymond E. Morgan, both worked for Continental Can Company ("Continental"). These men (along with approximately 7,000 similarly situated employees) were "laid-off" shortly before they were eligible to vest in Continental's "Magic Number" health and pension benefits.[1] As a result, two separate classes of plaintiffs brought actions against Continental claiming that they were wrongfully discharged as part of Continental's illegal scheme to avoid paying pension benefits.[2]
 
 
 3
 The class action suits alleged that Continental violated § 510 of ERISA by engaging in a "liability avoidance" scheme designed to prevent their employees from realizing pension benefits.[3] Continental eventually settled the class action suit in December of 1990, for a sum total of $415,000,000. The settlement funds were distributed among the class members using a formula devised by a Special Master appointed to the case. Under the distribution plan, each class member received a Basic Award, "defined by age and years of service at layoff," that was designed to "compensate for the dignitary loss suffered by the alleged discrimination on grounds of age and work experience as employees reached the Continental pension benefit thresholds." The members also received an Earnings Impairment Additur that was designed not only to provide compensation for loss in earnings capacity, but also "to approximate ... the long-term loss in employment prospects that faced most former Continental employees whose skills and opportunities were diminished for their lifetimes." Under this distribution plan, Gerbec received a total pre-tax award of $60,765; Morgan received a total pre-tax award of $94,410; and the parties paid both federal income tax as well as FICA tax on the award.[4]
 
 
 4
 On December 22, 1995, Plaintiffs filed the instant suit against the United States ("the Government") seeking reimbursement of the federal income and FICA taxes paid on their awards. They argued that their class action settlement award should not have been subject to federal income tax because I.R.C. § 104(a)(2) excludes "the amount of any damages received ... on account of personal injuries or sickness" from gross income,[5] 26 U.S.C.A. § 104(a)(2) (West 1988) (pre-1996 amendment), and that, under Treasury Regulation § 1.104-1(c), § 104(a)(2), this exclusion includes "an amount received ... through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." 26 C.F.R. § 1.104-1(c) (1994). Plaintiffs also argued that a refund of FICA taxes paid was warranted because the settlement proceeds were not "wages" or "remuneration for employment" subject to tax under 26 U.S.C. § 3121(a). Plaintiff filed a motion for summary judgment arguing that they were entitled the relief sought as a matter of law.
 
 
 5
 The Government filed a cross-motion for summary judgment, arguing that under Mertens v. Hewitt Associates, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), damages for ERISA violations were strictly limited to equitable remedies. The Government maintained that, as such, the proceeds Plaintiffs received from the class-action settlement could not be considered damages based upon tort or "tort type" rights, and therefore could not be considered exempt under § 104(a)(2). The Government also argued that FICA taxes were properly withheld from Plaintiffs' settlement proceeds as a matter of law.
 
 
 6
 On January 10, 1997, the district court granted the Government's motion in part, finding that Plaintiffs' awards were subject to federal income taxation. The court reasoned that Plaintiffs' compensatory damages arose from Continental's violation of ERISA § 510, and under Mertens, did not fit within the "tort or tort-type rights" exclusion of I.R.C. § 104(a)(2). Gerbec v. United States, 957 F.Supp. 122, 125 (S.D.Ohio 1997). However, the court also granted Plaintiff's motion in part, finding that, as a matter of law, Plaintiffs' award should not have been subject to FICA taxes because, "[p]laintiffs had already received full payment for the services they performed for Continental; thus, the settlement could not represent wages or remuneration for employment." Id. The parties filed their respective appeals and cross-appeals.
 
 II.
 Standard of Review
 
 7
 We review a district court's grant of summary judgment de novo. Henegar v. Banta, 27 F.3d 223, 225 (6th Cir.1994). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir.1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). We apply the same legal standard utilized by the district court. Hankins v. The Gap, 84 F.3d 797, 800 (6th Cir.1996).
 
 III.
 Analysis
 A. Federal Income Taxation
 
 8
 Mertens v. Hewitt Associates Interpretation of Relief Available Under § 502(a)(3)
 
 
 9
 The district court held that inasmuch as Mertens limits the relief available under § 502(a)(3) to traditional forms of equitable relief and does not allow for compensatory damages, Plaintiffs' settlement proceeds could not be characterized as being from a tort or "tort-like" remedy, and therefore were not excludable from taxation under § 104(a)(2).[6]
 
 
 10
 In Mertens, several former employees of the Kaiser Steel Company lost a significant portion of their pensions because of the alleged breach of fiduciary duties by Hewitt Associates, an actuarial services company. 508 U.S. at 250-51, 113 S.Ct. 2063. The petitioner, William Mertens, was one of a class of former Kaiser employees who sued Hewitt for breach of fiduciary duty. Id. The class also sued Hewitt as a non-fiduciary, claiming that ERISA § 502(a)(3) allowed a plan participant to sue a non-fiduciary and also permitted the court to order whatever equitable relief the court deemed necessary.[7] Id. At the time, the Supreme Court had not interpreted the precise meaning of the phrase "other appropriate equitable relief" as it is found in § 502(a)(3). Id. at 253-55 113 S.Ct. 2063.
 
 
 11
 In a five to four opinion, Justice Scalia narrowly construed the phrase "other appropriate equitable relief" as found in § 502(a)(3) as only permitting the categories of relief that were typically available in equity; those forms of relief such as injunctions, mandamus, and restitution. Mertens, 508 U.S. at 256-58, 113 S.Ct. 2063. In doing so, Justice Scalia acknowledged that the Court had not interpreted the precise phrase "other appropriate equitable relief" in the context of ERISA's § 502(a)(3), but that the Court had "construed the similar language of Title VII of the Civil Rights Act of 1964 (before its 1991 amendments)--'any other equitable relief as the court deems appropriate,' 42 U.S.C. § 2000e-5(g)--to preclude 'awards for compensatory or punitive damages.' " Id. at 255, 113 S.Ct. 2063 (citing United States v. Burke, 504 U.S. 229, 238, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992)). The Justice went on to conclude that it was appropriate to likewise limit the relief available under ERISA inasmuch as doing otherwise, would
 
 
 12
 require us either to give the term a different meaning these than it bears elsewhere in ERISA, or to deprive of all meaning the distinction Congress drew between "equitable" and "remedial" relief in § 409(a), and between "equitable" and "legal" relief in the very same section of ERISA, see 29 U.S.C. § 1132(g)(2)(E); in the same subchapter of ERISA, see § 1024(a)(5)(C); and in the ERISA subchapter dealing with the PBGC, see §§ 1303(e)(1), 1451(a)(1). Neither option is acceptable. The authority of courts to develop a "federal common law" under ERISA, is not the authority to revise the text of the statute.
 
 
 13
 Id. at 258-59, 113 S.Ct. 2063 (citations and footnotes omitted).[8]
 
 
 14
 Writing for the dissent, Justice White opined that the words "appropriate equitable relief" as found in § 502(a)(3) "[we]re no more than descriptive and simply refer[red] to all remedies available in equity under the common law of trusts, whether or not they were or are the exclusive remedies for breach of trust." Mertens, 508 U.S. at 268, 113 S.Ct. 2063 (White, J., dissenting). Justice White noted that this interpretation was consistent with the traditional "equitable remedies" available to trust beneficiaries, and "avoid [ed] the anomaly of interpreting ERISA so as to leave those Congress set out to protect--the participants in ERISA-governed plans and their beneficiaries--with 'less protection ... than they enjoyed before ERISA was enacted.' " Id. at 266-67, 113 S.Ct. 2063 (citations omitted).
 
 
 15
 Split Among the Circuits as to Whether Mertens Applies to the Continental Settlement
 
 
 16
 The split among the circuits as to the legal issues before this Court today and the application of the Mertens decision to the various claims arising from the Continental settlement, is as sharply divided as the Mertens Court itself. For example, the Court of Appeals for the Fourth Circuit found that settlement proceeds from the Continental settlement were properly subjected to income and FICA taxation. See Hemelt v. United States, 122 F.3d 204, 208-09 (4th Cir.1997). Like the Plaintiffs in the instant case, the Hemelt plaintiffs' were seeking a refund of the federal income taxes and the FICA taxes withheld from their settlement awards from Continental. Id. In rejecting the plaintiffs' claims, the Fourth Circuit found that compensatory damages were not recoverable under ERISA, and therefore, the settlement proceeds were properly taxed as income. Id.
 
 
 17
 The Hemelt Court found that the fact that the settlement predated the Supreme Court's holding in Mertens was of no consequence because, in applying Mertens, the court was
 
 
 18
 simply giving effect to the Supreme Court's enunciation of what ERISA means and always has meant, notwithstanding the McLendon Special Master and parties. Thus, the "retroactivity" of Mertens is not at issue here, as "[i]t is only when the law changes in some respect that an assertion of nonretroactivity" may even be considered.
 
 
 19
 122 F.3d at 208-09 (citation omitted). Relying upon United States v. Burke, 504 U.S. 229, 238, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) and Commissioner v. Schleier, 515 U.S. 323, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995), the Hemelt Court agreed that compensatory damages were not allowed under ERISA, inasmuch as ERISA actions "are not designed to compensate for ... intangible injuries and thus do not involve 'tort or tort type rights.' " 122 F.3d at 208.
 
 
 20
 Like the Court of Appeals for the Fourth Circuit, the Eighth Circuit has also found that the application of Mertens precluded proceeds from the Continental settlement from being exempt from taxation under § 104(a)(2). See Mayberry v. United States, 151 F.3d 855 (8th Cir.1998). The Eighth Circuit agreed with the Hemelt Court that, under Mertens, the Continental settlement did not stem from a tort or "tort-like" remedy. 151 F.3d at 859.
 
 
 21
 However, unlike the Courts of Appeals for the Fourth and Eighth Circuits, when addressing the same disputes arising out of this settlement, the Court of Appeals for the Fifth Circuit found that the proceeds were exempt from income taxation under § 104(a)(2) and were not subject to taxation under FICA. See Dotson v. United States, 87 F.3d 682, 687 (5th Cir.1996). The Dotson Court characterized the case as one of an "income tax" issue, as opposed to an "ERISA" issue, and therefore found that Mertens did not apply. Id. at 686-87. Specifically, the Dotson Court stated as follows:
 
 
 22
 The characterization of damages received is not affected by the shifting sands of statutory interpretation after a bona fide settlement has been reached or a damage award rendered.... The characterization of settlement depends upon the determination that the damages were received "through prosecution of a legal suit or action based upon tort or tort-type rights ..." Treasury Reg. 26 C.F.R. 1.104-1(c). The fact that such a remedy may no longer exist is irrelevant to the determination of the character of a settlement to be taxed.
 
 
 23
 Although the Supreme Court's decision in Mertens may retroactively apply to pending ERISA cases, this case is not an ERISA case. It is an income tax case involving the tax treatment of a final settlement of a claim for damages under ERISA that was concluded before the issue of first impression decided by the sharply divided Mertens court was even clearly foreshadowed. Consequently, Mertens does not change the classification of the instant settlement for tax purposes any more than it could retroactively reduce the amount of the settlement which the parties made based on their now perhaps outmoded interpretation of ERISA law.
 
 
 24
 Id. (footnote omitted).
 
 
 25
 However, the Fifth Circuit noted that, in the recent case of Commissioner v. Schleier, the Supreme Court clarified the requirements of § 104(a)(2) exclusion: the taxpayer must (1) demonstrate that the underlying cause of action is "based upon tort or tort-type rights" and (2) show that the damages were received "on account of personal injury or sickness." Dotson, 87 F.3d at 685 (citing Schleier, 515 U.S. at 334-37, 115 S.Ct. 2159). Having found settlement proceeds were recovered for a tort-like claim, the Dotson Court stated that next inquiry was whether these damages were received "on account of personal injury." 57 F.3d at 689.
 
 
 26
 In analyzing this inquiry, the Dotson Court focused on the Schleier holding, where it was found that settlement damages for back pay received through a discriminatory firing case brought under the Age Discrimination in Employment Act (ADEA) were taxable as income and not excludable under § 104(a)(2) because the recovery of back wages was not "on account of" any personal injury and because no personal injury affected the amount of back wages recovered. By way of example, the Schleier Court explained its reasoning:
 
 
 27
 Consideration of a typical recovery in a personal injury case illustrates the usual meaning of "on account of personal injuries." Assume that a taxpayer is in an automobile accident, is injured, and as a result of that injury suffers (a) medical expenses, (b) lost wages, and (c) pain, suffering, and emotional distress that cannot be measured with precision. If the taxpayer settles a resulting lawsuit for $30,000 (and if the taxpayer has not previously deducted her medical expenses, see § 104(a)), the entire $30,000 would be excludable under § 104(a)(2). The medical expenses for injuries arising out of the accident clearly constitute damages received "on account of personal injuries." Similarly, the portion of the settlement intended to compensate for pain and suffering constitutes damages "on account of personal injury." Finally the recovery for lost wages is also excludable as being "on account of personal injuries," as long as the lost wages resulted from time in which the taxpayer was out of work as a result of her injuries. See. e.g., Threlkeld v. Commissioner, 87 T.C. 1294, 1300, 1986 WL 22061 (1986) (hypothetical surgeon who loses finger through tortious conduct may exclude any recovery for lost wages because "[t]his injury ... will also undoubtedly cause special damages including loss of future income"), aff'd, 848 F.2d 81 (C.A.6 1988). The critical point this hypothetical illustrates is that each element of the settlement is recoverable not simply because the taxpayer received a tort settlement, but rather because each element of the settlement satisfies the requirement set forth in 104(a)(2) (and in all of the other subsections of § 104(a)) that the damages were received "on account of personal injuries or sickness."
 
 
 28
 In contrast, no part of respondent's ADEA settlement is excludable under the plain language of § 104(a)(2). Respondents recovery of back wages, though at first glance comparable to our hypothetical accident victim's recovery lost wages, does not fall within § 104(a)(2)'s exclusion because it does not satisfy the critical requirement of being "on account of personal injury or sickness." Whether one treats respondent's attaining the age of 60 or his being laid off on account of his age as the proximate cause of respondent's loss of income, neither the birthday nor the discharge can fairly be described as a "personal injury" or "sickness." Moreover, though respondent's unlawful termination may have caused some psychological or "personal" injury comparable to the intangible pain and suffering caused by an automobile accident, it is clear that no part of respondent's recovery of back wages is attributable to the injury. Thus, in our automobile hypothetical, the accident causes a personal injury which in turn causes a loss of wages. In age discrimination, the discrimination causes both the personal injury and loss of wages, but neither is linked to the other. The amount of back wages recovered is completely independent of the existence or extent of any personal injury.
 
 
 29
 Schleier, 515 U.S. at 329-30, 115 S.Ct. 2159 (footnote omitted).
 
 
 30
 Based upon this reasoning, the Fifth Circuit found that the back wages received by Dotson under the settlement with Continental could not be excluded from taxation under § 104(a)(2). 87 F.3d at 689. The Fifth Circuit analogized the antidiscrimination provision of § 510 of ERISA to the ADEA, and noted that, similarly, the damages received by Dotson were for both a firing and for personal injuries; however, the personal injuries did not give rise to the lost wages. Id. Therefore, the court concluded that it was necessary to remand Dotson's case for a determination of the amount of back wages included in the Basic Award, which would then be subject to income taxation. The court also concluded that, because the Earnings Impairment Additur compensated to some extent for future lost wages, remand was necessary on that issue as well. Id. The court held that upon remand,
 
 
 31
 the district court should determine the degree to which the award represented lost wages for Mr. Dotson, since the record shows that he actually saw an increase in earnings at his next job. Once the district court distinguishes future lost wages from other potential parts of the Earnings Impairment Additur, it must also determine the nature of that award, and the degree to which the award envisioned earnings impairment as a result of the firing, and thus taxable, or instead, "on account of personal injuries" such as emotional damage or loss of reputation. Any part of the future lost wages attributable to causation by personal injury is excludable.
 
 
 32
 Id. However, the Fifth Circuit made it clear in Dotson that, on all other points, the proceeds from the settlement with Continental fell squarely within the exclusion set forth in § 104(a)(2), and therefore were excludable from income taxation.
 
 Sixth Circuit's View
 
 33
 In Mayberry, the Eighth Circuit acknowledged that the Fourth Circuit and the Fifth Circuit had reached opposing results in deciding the exact issues arising out of the Continental settlement: "[A] Fifth Circuit panel decided in favor of the taxpayers after focusing on the parties' intent at the time of the settlement and the interests in finality and predictability of taxation ... [while] the Fourth Circuit focused instead on the nature of the underlying action that had been settled and on the Supreme Court's decision in Mertens [and decided in favor of the Government]." Mayberry v. United States, 151 F.3d 855, 858 (8th Cir.1998) (citations omitted).
 
 
 34
 We agree with the Fifth Circuit's reasoning. As noted by the Dotson Court, the Special Master in this case allowed Plaintiffs to introduce evidence of nonpecuniary losses.[9] Therefore, in arriving at a proposed remedy, the Special Master considered the testimony of former workers who talked about lost opportunities, severe financial and emotional problems, severe financial dislocation, divorces, problems with offspring, and bankruptcies. The arm's length settlement agreed to between the parties provided compensatory relief for the wrongs to which these plaintiffs testified. Accordingly, such compensatory relief clearly falls within the § 104(a)(2) exclusion, and to find otherwise would thwart the Congressional intent behind § 104(a)(2), which is to provide a tax exclusion for victims of these very types of injuries. See Dotson, 87 F.3d at 687.
 
 
 35
 We emphasize, as did the Fifth Circuit, that the case before us today is not an ERISA case. Dotson, 87 F.3d at 686. We are not deciding whether compensatory damages were properly allowed under the facts of this case. That question need not be answered because the parties agreed to provide such damages in an arm's length good faith settlement nearly six years ago, and the district court judge approved the settlement where the law at the time did not dictate otherwise; specifically, the Supreme Court had yet to render an affirmative decision on this issue and the dicta of Ingersoll-Rand supported a finding that compensatory damages were allowed under ERISA. See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 145, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); supra note 9; see also, Mertens, 508 U.S. at 255, 113 S.Ct. 2063 (noting that the precise phrase "other appropriate equitable relief" as found in § 502(a)(3) had never been specifically interpreted by the Court); Dotson, 87 F.3d at 688 n. 3 (citing Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960) (inquiry into the motives of taxpayers and those from whom they receive income is relevant when ascertaining whether taxation is appropriate)).
 
 
 36
 If there had been a bench trial and the district court judge had allocated the award based on dignitary loss, loss in earning capacity, and long-term loss in employment prospects, this Court would respect that allocation unless it was clearly erroneous. Because the law at the time did not dictate otherwise, we would find that the district court's decision was not clearly erroneous, although after Mertens a different result would be necessary because Mertens allows only equitable relief which would mean back-pay and not tort-type relief. Therefore, because this was a court approved settlement, the point remains that the law at the time was such that the district court's approval was proper under the law and, as found by the Fifth Circuit, "[t]he characterization of damages received is not affected by the shifting sands of statutory interpretation after a bona fide settlement has been reached or a damage award rendered.... The fact that such a remedy may no longer exist is irrelevant to the determination of the character of a settlement to be taxed." Dotson, 87 F.3d at 686-87.
 
 
 37
 The case before us today is an income tax case in which we must determine whether the settlement proceeds, that were provided as compensatory damages for the wrongs to which the plaintiffs testified, are subject to income taxation or exempt under § 104(a)(2). Under these facts, the answer is clear--the compensatory damages provided in the arm's length agreement with Continental fit squarely within the purpose and intent of the § 104(a)(2) exclusion as proceeds from a tort or "tort-type" remedy. See Dotson, 87 F.3d at 687.
 
 
 38
 As such, we find that Harper v. Virginia Department of Taxation, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) should not be used to retroactively apply Mertens to this case. See supra note 6. Although Supreme Court case law as it stands today may dictate that the Special Master incorrectly found that compensatory damages were allowed in the Continental settlement, the law at the time did not specifically dictate otherwise; the parties agreed to such damages in good faith negotiations; and the district court approved the settlement based upon the testimony provided by the aggrieved plaintiffs. We are not here to question the wisdom of the agreement reached, nor recharacterize the damages to which the parties agreed and the district court approved, where the law at the time did not command a different result. Accordingly, we find that the settlement award is no longer "open on direct review" and the rule espoused in Harper does not apply. See, e.g., Zeneca Ltd. v. Novopharm Ltd., 923 F.Supp. 74, 76 (D.Md.1995) (finding that in patent infringement case, retroactive application of underlying patent suit that was eventually settled and vacated was not justified because the underlying case was no longer "open on direct review").[10]
 
 
 39
 Although we find that Mertens is not applicable to the instant case, we hasten to note that while Mertens and its progeny[11] are currently the law of the land, as a matter of public policy, academics and legal commentators have been extremely critical of the holding espoused in Mertens because of its narrow scope and unjust result.[12] In fact, the Sixth Circuit has expressed its displeasure with the apparent inequity Mertens provides to aggrieved parties seeking remedies under ERISA. See Allinder v. Inter-City Prods.Corp., 152 F.3d 544, 553 (6th Cir.1998) (embracing the criticism of Mertens and holding that, because it was constrained by Mertens, the plaintiffs were left without a suitable remedy under ERISA for an employer's misdeeds). However, we also note that while we are displeased with the Mertens' holding, our displeasure in no way influenced our decision today.
 
 
 40
 Mertens restricts plan beneficiaries to remedies such as mandamus, injunction, constructive trust, and restitution, even if those beneficiaries suffer harms that can only be properly rectified through compensatory damages. As such, the practical import of Mertens, as applied to a case such as this, is that a corporation could create a scheme to prevent employees from fully vesting in their pensions without suffering any severe liability for their actions. See Flint, supra note 12 at 618-19. We find such a result unacceptable, particularly in light of the Congressional intent behind § 104(a)(2)--to relieve a taxpayer who has suffered a personal injury, as well as the Congressional intent behind ERISA--"to protect ... the interests of participants in employee benefit plans and their beneficiaries ... by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Under Mertens, it is dubious whether a plan beneficiary would get "appropriate remedies," as Congress intended. See H.R.REP. NO. 101-247, at 55-56 (1989), reprinted in 1989 U.S.C.C.A.N. 1906, 1948.[13]
 
 
 41
 However, with that said, under Schleier, we must nevertheless determine what portion of Plaintiffs' settlement awards were for back wages and therefore subject to income taxation. See Schleier, 515 U.S. at 329-31, 115 S.Ct. 2159 (finding that to qualify for exclusion under § 104(a)(2), the damages received must be both "on account of personal injury" and stem from a tort or tort-like claim); Dotson, 87 F.3d at 689. Accordingly, those damages not received on account of personal injury must be factored out, even though they stemmed from a tort or tort-like claim. As the Fifth Circuit found necessary to do in Dotson, we must remand this case to the district court for a determination of the amount of back wages included in the Basic Award, which would then be subject to income taxation. Dotson, 87 F.3d. at 689. In addition, we must also remand the case for a determination of future lost wages included in Plaintiffs' Earnings Impairment Additur award that were attributable to the firing, which would be subject to income taxation, while carefully factoring out those future lost wages and other components attributable to causation by personal injury which would be excludable under § 104(a)(2). Id.
 
 
 42
 In summary, at the time the settlement was crafted by the Special Master, agreed to by the parties, and approved by the district court in this case, it was designed to compensate for non-physical personal injuries inflicted by Continental's apparent wrong-doing resulting in class members being deprived of their Magic Number pension benefits. As such, we find it unnecessary to apply Mertens retroactively to the settlement proceeds at this date, and decline to do so because the law at the time apparently allowed for such compensatory damages under ERISA and the case is therefore no longer "open on direct review." Accordingly, we hold that Plaintiffs' compensatory settlement award for non-physical personal injuries fits squarely within the I.R.C. § 104(a)(2) "tort or tort-type rights" exemption, subject to those proceeds received for back or future wages received as a result of the firing.
 
 B. FICA Taxation
 
 43
 The Government claims that the district court erred in finding that, as a matter of law, Federal Insurance Contributions Act (FICA) taxes, 26 U.S.C. §§ 3101 et seq., should not have been withheld from Plaintiffs' settlement distribution. The Government contends that, because the Basic Award was based upon an individual's age and seniority with Continental and because the Earnings Impairment Additur was based upon the individual's earning history, the settlement distribution was, in fact, remuneration for employment and thus wages subject to FICA taxation.
 
 
 44
 FICA taxes consist of a percentage of an employee's wages collected to contribute to the Social Security programs. See Rowan Cos., Inc. v. United States, 452 U.S. 247, 250 n. 2, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981). Wages consist of "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash." 26 U.S.C.A. § 3121(a) (West Supp.1998). Employment is defined as "any service, or whatever nature, performed ... by an employee for the person employing him." 26 U.S.C.A. § 3121(b) (West Supp.1998). The Fifth Circuit held, and we agree, that "[d]amages not included in the tax code's definition of 'income' are not considered 'wages.' " Dotson, 87 F.3d at 689 (citing Rowan, 452 U.S. at 254, 101 S.Ct. 2288; Redfield v. Insurance Co. of North Am., 940 F.2d 542, 548 (9th Cir.1991); Anderson v. United States, 929 F.2d 648, 654 (Fed.Cir.1991)). Therefore, any portion of the settlement proceeds that are determined to be excludable from taxable income on remand should also be excludable from FICA taxes.
 
 
 45
 With respect to the portions of the award that are found on remand to be includable in income, only the amounts that fall within the definition of wages under FICA are subject to FICA taxation.[14] We held that two separate elements of the aggregate award would be subject to income taxation: any back wages in the Basic Award and any future wages in the Earnings Impairment Additur constituting earnings impairment awarded as a result of the firing. We now hold that any part of the award allocated on remand to either of these elements will be "wages" subject to FICA taxation.
 
 
 46
 The phrase "remuneration for employment" as it appears in § 3121 should be interpreted broadly. See 26 C.F.R. § 31.3121(a)-1(b) ("all remuneration for employment unless specifically excepted"); Social Sec. Bd. v. Nierotko, 327 U.S. 358, 365, 66 S.Ct. 637, 90 L.Ed. 718 (1946) (concluding that the phrase " 'any service ... performed ... for his employer' " under the Social Security Act "import[s] breadth of coverage."). We hold that the phrase "remuneration for employment" includes certain compensation in the employer-employee relationship for which no actual services were performed.[15] In Nierotko, the Supreme Court was faced with the issue of "whether 'back pay,' which is granted to an employee under the National Labor Relations Act, shall be treated as 'wages' under the Social Security Act." Nierotko, 327 U.S. at 359, 66 S.Ct. 637. The Court held that awarded back pay qualified as wages under the Social Security Act of 1935 for purposes of receiving credit to the worker's Old Age and Survivor's Insurance account. Id. at 360, 66 S.Ct. 637. The Court reasoned that " 'service' as used by Congress in this definitive phrase [of the Social Security Act] means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer." Id. at 365-66, 66 S.Ct. 637. The holding in Nierotko clearly supports the conclusion that awards representing a loss in wages, both back wages and future wages, that otherwise would have been paid, reflect compensation paid to the employee because of the employer-employee relationship, regardless of whether the employee actually worked during the time period in question.
 
 
 47
 Had Plaintiffs in this case actually worked for Continental during the periods for which they sought back wages and future wages lost as a result of the firing, the wages indisputably would have been subject to FICA taxation. We conclude that it would be improper to exempt Plaintiffs from mandatory FICA taxes merely because they were not employees of Continental at the time the payments were made and because the payments were not in return for actual services performed. Cf. 26 C.F.R. § 31.3121(a)-(1)(i) ("[r]emuneration for employment ... constitutes wages even though at the time paid the relationship of the employer and employee no longer exists between the person in whose employ the services were performed and the individual who performed them"). Therefore, any damages attributable to wages they would have received had they not been wrongly terminated should also be subject to the FICA taxes they would have paid on those wages had they not been wrongly terminated. Any other result would run contrary to the purpose of the FICA system.
 
 IV.
 
 48
 Accordingly, because we find that a portion of the settlement may be subject to federal income taxation as well as FICA taxation, we REVERSE IN PART AND AFFIRM IN PART the district court's grant of summary judgment in favor of the Government on the federal income tax issue, and AFFIRM IN PART AND REVERSE IN PART the district court's grant of summary judgment in favor of Plaintiffs on the FICA taxation issue, and REMAND the case for proceedings consistent with this opinion.
 
 
 49
 WELLFORD, Circuit Judge, dissenting.
 
 
 50
 I dissent from the decision in this case, one of many arising from a consolidated class action suit brought by former employees of Continental Can Company challenging the taxability of payments made to such employees, including plaintiffs Gerbec and Morgan. The district court held that payments to these plaintiffs were taxable for federal income tax purposes, but not taxable under FICA.
 
 
 51
 The majority, somewhat begrudgingly, concedes that the Supreme Court in Mertens v. Hewitt Associates, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), construed § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), as "only permitting the categories of relief that were typically available in equity." Id. at 256-58. Mertens held that the term, "any other equitable relief," excludes from income tax consequences "awards for compensatory or punitive damages." Id. at 255, 113 S.Ct. 2063. The majority adopts the reasoning of Dotson v. United States, 87 F.3d 682 (5th Cir.1996), interpreting Mertens in the context of the issues of this case. Dotson was a split opinion, and the dissenter, I believe, made the proper interpretation. The Fourth Circuit in Hemelt v. United States, 122 F.3d 204 (4th Cir.1997), like the district court and the dissent in Dotson, reached a contrary result, finding that the proceeds of the Continental Can settlement were taxable for income tax purposes and for FICA tax purposes as well.
 
 
 52
 The reasoning of Hemelt was also adopted in Mayberry v. United States, 151 F.3d 855 (8th Cir.1998). That line-up of circuit judges in these three cases (seven judges to two judges) hardly seems to indicate a "sharply divided" judicial assessment of the issues and the import of Mertens upon these issues. Three of the four district courts involved have adopted the rationale of Hemelt and Mayberry.
 
 
 53
 Like the majority of the circuit courts and judges who have considered this very controversy, I disagree with my colleagues and conclude that Mertens is applicable here and that this is indeed an ERISA-related case. The rule announced in Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), is properly applicable with respect to Mertens.[1] Our decision should be based upon what seems to be reasoned legal authority of two of our sister circuits, not by the fears about the undesirable effects of Mertens, a case binding on us. See Dotson, 87 F.3d at 691 (Smith, C.J., dissenting).
 
 
 54
 I find the majority of the panel to be off the mark in expressing concerns about "appropriate remedies, sanctions and access to federal courts" under ERISA, particularly when it states that this is not an ERISA case. That the benefits awarded plaintiffs under ERISA are substantial belies such concerns in this case as access to the courts and appropriate remedies. The issue is simply whether these benefits are taxable just as other compensation-like, non-personal injury-type benefits are taxable.
 
 
 55
 I agree with my colleagues only in respect to their concession that at least the back wages portion and the "future lost wages" portion of the awards are clearly taxable both with respect to income and FICA taxes. I dissent, however, from the statement that any "future lost wages attributable to causation by personal injury" may be excludable from tax under § 104(a)(2) under the circumstances of this case.
 
 
 56
 A major basis for the majority opinion that this "is not an ERISA case" is that the parties made a good faith settlement agreement concerning whether benefits to employees, such as plaintiffs in this case, were "compensatory damages." This rationale that a party agreement, even if reached in good faith, may be binding on the proper tax characterization of benefits or payments made by one party to the other does not pass muster. Tax disputes are frequently determined by the Internal Revenue Service or the court based upon the tax code and regulations instead of the way parties may have purported or intended to act. A party employee may claim that a payment to that employee is a gift instead of a taxable bonus or compensation. A party corporation may claim and intend that a distribution to a shareholder is a return of capital or a capital gain rather than a taxable dividend. An ex-spouse's payment to his former wife may be deemed taxable alimony rather than child support. A "loan" from one party to another may be deemed by IRS to be a taxable payment, dividend, or compensation. All of these agreements may involve unintended tax consequences to the parties thereof. In this tax case arising out of an ERISA settlement, we must apply the law regardless of the characterization of the benefits designed by the parties in reaching a settlement.
 
 
 57
 Dotson, supra, reversed the decision of the district court, holding that "Mr. Dotson failed the requirement that damages be recovered for a tort-like claim." 87 F.3d at 685. The district court in Dotson relied upon Mertens as to characterization of the ERISA benefits, as have the other circuits save the divided Fifth Circuit. See also Medina v. Anthem Life Ins. Co., 983 F.2d 29, 32 (5th Cir.), cert. denied 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993). The Dotson majority reached a decision that this controversy is not an ERISA case, but it realized the strong ERISA implications.[2] Id. at 686. It also held that Mertens could not "change the classification ... for tax purposes" and distinguished (or attempted to distinguish) both Commissioner v. Schleier, 515 U.S. 323, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995), and United States v. Burke, 504 U.S. 229, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992). It should be noted that Schleier cited Burke at 248, 112 S.Ct. 1867 as recognizing the rule that "exclusions of income must be narrowly construed." 515 U.S. at 328, 115 S.Ct. 2159. Schleier interpreted § 104(a)(2) as having a "critical requirement of being 'on account of personal injury or sickness' " in order to be excludable, and it was considering a claim of recovery of back wages which it held not to be " 'on account of' any personal injury." Id. at 330, 331, 115 S.Ct. 2159.
 
 
 58
 In my view, the cogent dissent in Dotson held that Dotson "cannot avoid the fact that those cases [Mertens and Medina, supra ] classify his cause of action as one that does not redress personal injury." Id. at 691 (citing Rivers v. Roadway Express, 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), a case not considered by the Dotson majority); see also Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993)(not cited nor apparently considered by the Dotson majority). I would note also that the Dotson majority's reliance on Redfield v. Insurance Co. of North America, 940 F.2d 542 (9th Cir.1991), has been severely undercut by its implicit overruling in Schleier, and the fact that it was decided before Burke.
 
 
 59
 I must confess that I am at a loss to understand that section of the majority opinion styled "Sixth Circuit's View." That seven page discussion cites to one Sixth Circuit case in passing--"See Allinder v. Inter-City Prods. Corp., 152 F.3d 544, 553 (6th Cir.1998) (embracing the criticism of Mertens. ... )." The two judges on the majority side joined the court's decision in Allinder criticizing that Supreme Court decision. Mertens, of course, is binding on this court whether my two colleagues approve of it or not. Allinder was an ERISA case; the majority here concede that this is not an ERISA dispute. That same misnamed discussion footnotes Varity Corp. v. Howe, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), also an ERISA case, which discusses fiduciary responsibility, definitely not an issue in this case. (Footnote 11.) Varity Corp. also cites Mertens with apparent approval. The dictum in Allinder is parroted by the majority, although Allinder is not, by any stretch, precedent for the majority decision, which is distinctly a minority view. The majority finally concedes that it is "displeased" with Mertens, but claims this viewpoint has not influenced its decision. In sum, there is no Sixth Circuit authority for the majority view, and this court is without authority to disregard or bypass Mertens. It seems evident to this writer that the majority takes a congressional subcommittee statement, contrary to the Supreme Court interpretation of ERISA, that it now will effectually develop "a Federal common law with respect to employee benefit plans, including the development of appropriate remedies, even if they are not specifically enumerated," and they apply this notion to the issues in this non-ERISA case. (Footnote 11.)
 
 
 60
 Nor can this writer understand the majority's unexplained conclusion that "the case is no longer 'open on direct review' " so that the majority may somehow avoid application of Mertens contrary to Hemelt, Mayberry, and the dissenter in Dotson.
 
 
 61
 Mayberry and Hemelt point out that many of the circuits had held at the time of the Continental Can settlement that such damages, claimed to be personal injury damages, were not available under ERISA. Hemelt affirmed the decision of the district court, which also disagreed with the decision of the Dotson majority. Chief Judge Wilkinson in Hemelt concluded that the payments in question were essentially wages, relying on Mertens and Burke, and characterized what plaintiffs received as a "substantial benefit to which they were not entitled under law, namely the award of large sums of money for emotional and intangible injuries that ERISA section 502 does not compensate."[3] 122 F.3d at 209. I agree with that rationale--finding that the plaintiffs must pay taxes on these benefits denies them a kind of "double windfall." Id.
 
 
 62
 The exclusion sought by plaintiffs from taxation is narrowly construed, not broadly construed as the majority does in this case. For the reasons well-stated by Hemelt, Mayberry, and the Dotson dissent, I would hold that the benefit payments received by plaintiffs are fully taxable for federal income and FICA purposes.
 
 
 
 [1]
 A Continental Group employee qualified for a Magic Number benefit if the employee had at least fifteen years of continuous service, and if the sum of the employee's age and years of continuous service equaled seventy (if the worker was at least fifty years old) or seventy-five (if the worker was younger than fifty). In 1977, Continental added the same Magic Number benefit for employees whose age and years of continuous service equaled sixty-five, as long as the employee had at least twenty years of continuous service on the last day worked. This latter benefit was referred to as the "Rule of 65 benefit." Magic Number benefits were equal to a full retirement pension. See "Report and Recommendation from George L. Priest, Special Master, Regarding the Fairness of the Settlement and of the Proposed Plan of Distribution to the Honorable H. Lee Sarokin," July 13, 1992. (J.A. at 284.)
 
 
 [2]
 See McLendon v. Continental Group, Inc., 749 F.Supp. 582 (D.N.J.1989), aff'd sub nom., McLendon v. Continental Can Co., 908 F.2d 1171 (3d Cir.1990); Gavalik v. Continental Can Co., 812 F.2d 834 (3d Cir.1987), cert denied, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987); McLendon v. Continental Group, Inc., 802 F.Supp. 1216 (D.N.J.1992)
 
 
 [3]
 § 510 of ERISA provides that:
 It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled.
 29 U.S.C.A. § 1140 (West 1985).
 
 
 [4]
 FICA taxes amounting to $1,817.21 were withheld from the Morgans' award, and $1,389.89 in FICA taxes were withheld from the Gerbecs' award. Federal income taxes amounting to $16,955.67 were withheld from the Morgans' award, and $15,467.16 in federal income taxes were withheld from the Gerbecs' award
 
 
 [5]
 The Small Business Job Protection Act of 1996 amended Section 104(a)(2) to limit the exclusion to damages received on account of personal physical injuries or sickness. However, this amendment is inapplicable to the facts of this case because statutes are to have prospective effect only. See, e.g., United States v. Security Indus. Bank, 459 U.S. 70, 79-80, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) (discussing the general principle of prospective application of statutes)
 
 
 [6]
 The district court applied Mertens retroactively in light of the Supreme Court's holding in Harper v. Virginia Department of Taxation, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). In Harper, the Court held that "rulings of the Supreme Court of the United States must be given full effect as to all cases still open on direct review and as to all events, regardless of whether such events predate or post-date announcement of the rule." Id. at 97, 113 S.Ct. 2510. Thus, the district court concluded that the retroactive application of Mertens to the facts of this case best served the interests of "finality, predictability, and consistency." Gerbec, 957 F.Supp. at 125
 
 
 [7]
 § 502(a)(3) provides that a civil action may be brought
 by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
 29 U.S.C.A. § 1132(a)(3) (West 1985).
 
 
 [8]
 We note that the dissent erroneously states that " Mertens held that the term, 'any other equitable relief,' excludes from income tax consequences 'awards for compensatory or punitive damages.' " Mertens did not address income tax consequences at all, and certainly did not so hold. See Mertens, 508 U.S. at 255, 113 S.Ct. 2063
 
 
 [9]
 The Special Master found that he had authority to consider nonpecuniary losses under the Supreme Court's decision in Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). In Ingersoll-Rand, an ERISA § 510 case in which the plaintiff sought a broad range of relief, including future lost wages, damages for mental anguish, and punitive damages, Justice O'Connor stated in dicta that "there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek 'pension benefits.' It is clear that the relief requested here [for a § 510 violation] is well within the power of the federal courts to provide." Id. at 145, 111 S.Ct. 478. Therefore, the Special Master believed that nonpecuniary losses could be rightfully recovered from ERISA § 510 actions pursued through ERISA § 502
 We find it unnecessary to comment on the Special Master's reliance upon Ingersoll-Rand because, as stated, characterization of damages received in this case is solely dependant upon the determination that the damages were received through an action based upon tort or tort-type rights. See Dotson, 87 F.3d at 686.
 
 
 [10]
 We note that, likewise, we find it unnecessary to adopt the Fourth Circuit's approach and apply the Burke holding as a bar to the application of the § 104(a)(2) exclusion. See Hemelt, 122 F.3d at 208 (citing Burke, 504 U.S. at 239, 112 S.Ct. 1867)
 
 
 [11]
 See, e.g., Varity Corp. v. Howe, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)
 
 
 [12]
 See Elaine McClatchey Darroch, Mertens v. Hewitt Associates: The Supreme Court's Dismantling of Civil Enforcement Under ERISA, 1994 DET. C.L.REV. 1089 (1994) (analyzing the history and development of the common law of trusts, discussing legislative attempts to overturn Mertens, and recommending that Mertens should be reversed); Karl J. Stoecker, ERISA Remedies After Varity Corp. v. Howe, 9 DEPAUL BUS. L.J. 237, 245-258 (1997) (discussing the narrow construction of Section 502(a)(3) in Mertens, and concluding that the Varity approach "is more in keeping with ERISA's purpose than the narrowly categorical approach taken by Mertens" ); see also George Lee Flint, Jr., ERISA: Extracontractual Damages Mandated For Benefit Claims Actions, 36 ARIZ. L.REV. 611 (1994) (advancing the argument that legislative history, the historical development of employee benefit law, and the law of trusts can all be read to permit recovery of extracontractual damages under ERISA Section 502(a))
 
 
 [13]
 In this report, the Committee on Budget opined:
 The Committee believes that the legislative history of ERISA and subsequent expansions of ERISA support the view that Congress intended for the courts to develop a Federal common law with respect to employee benefit plans, including the development of appropriate remedies, even if they are not specifically enumerated in section 502 of ERISA. Since the issue of preemption and civil remedies under ERISA is within the exclusive purview of the labor committees of Congress, the Committee has, over the years, considered the option of amending the statute to encompass specifically several additional remedies. In light of the legislative history on this issue, however, the Committee believes such action is unnecessary.
 The Committee reaffirms the authority of the Federal courts to shape legal and equitable remedies to fit the facts and circumstances of the cases before them, even though those remedies may not be specifically mentioned in ERISA itself. In cases in which, for instance, facts and circumstances show that the processing of legitimate benefit claims has been unreasonably delayed or totally disregarded by an insurer, an employer, a plan administrator, or a plan, the Committee intends the Federal courts to develop a Federal common law of remedies, drawing upon principles enunciated in state law, including such remedies as the awarding of punitive and/or compensatory damages against the person responsible for the failure to pay claims in a timely manner.
 H.R. REP. 101-247 at 56.
 
 
 [14]
 Not all income is wages. The Supreme Court in Rowan pointed out that "many items qualify as income and yet clearly are not wages." Rowan, 452 U.S. at 254, 101 S.Ct. 2288 (quoting Central Ill. Pub. Serv. Co. v. United States, 435 U.S. 21, 25, 98 S.Ct. 917, 55 L.Ed.2d 82 (1978)). For example, in Central Illinois, the Court held that reimbursements to employees for lunch expenses incurred during day trips were includable in income, but were not wages. See Central Ill. Pub. Serv. Co., 435 U.S. at 29-30, 98 S.Ct. 917. However, the Court in Rowan did hold that the definition of wages in FICA, 26 U.S.C. § 3121, should "be interpreted in the same manner" as the definition of wages under the income tax withholding chapter of the I.R.C. See Rowan, 452 U.S. at 263, 101 S.Ct. 2288. The latter defines wages as "all remuneration ... for services performed by an employee for his employer." 26 U.S.C.A. § 3401 (West Supp.1998)
 
 
 [15]
 But see, e.g., Dotson, 87 F.3d at 690 ("[t]he [award] compensated for 'loss in earning capacity,' not for services already performed, and is thus not subject to wage taxation"); Churchill v. Star Enters., 3 F.Supp.2d 622, 624-25 (E.D.Pa.1998) (holding that an employer could not withhold FICA or income taxes from damages awarded for a violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq., because the employee was not performing services for the employer during the period in question)
 
 
 [1]
 The majority reluctantly concedes that "Supreme court case law ... may dictate that the Special Master incorrectly found that compensatory damages were allowed in the Continental settlement." We should not be influenced, it seems to me, by University of Detroit, DePaul Business Law Journal and Arizona law review articles rather than reasoned decisions of the strong majority of views of circuit judges on the issues. See footnote 11
 
 
 [2]
 In Dotson, 87 F.3d at 687, the majority discusses the "Dotsons' ERISA class action suit" as "one step removed." At the least, Dotson recognized and discussed throughout ERISA complications and judicial interpretations of ERISA
 
 
 [3]
 See also Mayberry: "[h]ow the class may have characterized its damages does not control." Further, it held that a court does not look exclusively to the "record the parties created in order to determine the tax character of a recovery." (Emphasis added.)