**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GEORGE J. HEMELT; THERESA G.
HEMELT,
<u>Plaintiffs-Appellants,</u>

No. 96-2827

v.

UNITED STATES OF AMERICA,
<u>Defendant-Appellee.</u>

WILLIAM W. SCHELL; LAVERNE C.
SCHELL,
<u>Plaintiffs-Appellants,</u>

No. 96-2828

v.

UNITED STATES OF AMERICA,
<u>Defendant-Appellee.</u>

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-94-2490-AMD, CA-95-3978-AMD)

Argued: July 9, 1997

Decided: August 7, 1997

Before WILKINSON, Chief Judge, LUTTIG, Circuit Judge,
and BOYLE, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Luttig and Judge Boyle joined.

**COUNSEL**

**ARGUED:** Stephen Liddon Hester, Washington, D.C., for Appellants. Kenneth W. Rosenberg, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** K. Peter Schmidt, ARNOLD & PORTER, Washington, D.C., for Appellants. Loretta C. Argrett, Assistant Attorney General, Kenneth L. Greene, Lynne A. Battaglia, United States Attorney, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

**OPINION**

WILKINSON, Chief Judge:

George Hemelt, William Schell and their spouses brought actions seeking to recover federal income and FICA taxes withheld from their portions of a settlement in a class-action ERISA lawsuit. The district court denied both claims, ruling that the settlement proceeds did not fall within the Internal Revenue Code's exception for "damages received . . . on account of personal injuries or sickness," I.R.C. § 104(a)(2), and that they were "wages" subject to FICA taxation.

Taxpayers' challenges to these rulings are without merit. In Mertens v. Hewitt Associates, 508 U.S. 248 (1993), the Supreme Court held that ERISA section 502(a)(3) cannot be the source of the sort of compensatory damages excluded from income by section 104(a)(2). As a result, and in light of FICA's broad definition of "wages" and the close relationship between the settlement awards and taxpayers' employment with Continental, the claims for FICA refunds must also fail. Accordingly, we affirm the judgment of the district court.

I.

In 1983, a class of employees laid off by Continental Can Company filed suit against their former employer under section 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29

2

U.S.C. § 1132. Plaintiffs alleged that Continental fired them to avoid incurring liability for their pensions in violation of section 510 of ERISA, 29 U.S.C. § 1140. McLendon v. Continental Group, Inc., 660 F. Supp. 1553, 1556 (D.N.J. 1987), aff'd, 908 F.2d 1171 (3d Cir. 1990). The district court in McLendon granted partial summary judgment to the plaintiffs on the issue of Continental's liability for violating ERISA. 660 F. Supp. at 1564-65. To facilitate settlement of the outstanding damages issues, the court appointed a Special Master. McLendon, 749 F. Supp. 582, 612 (D.N.J. 1989), aff'd, 908 F.2d 1171 (3d Cir. 1990).

With the assistance of the Special Master, the parties to the class action negotiated a Settlement and Plan of Distribution that required Continental to pay a total of $415 million to approximately five thousand former employees. McLendon, 802 F. Supp. 1216, 1220-21 (D.N.J. 1992). The Special Master concluded that individualized determinations of the losses suffered by each class member would be too difficult and time-consuming. Thus, to allocate the $415 million, the Master devised formulas for two categories of recovery: the Basic Award and the Earnings Impairment Additur. The Basic Award was determined by factoring together each class member's age and years of service as of the time he was laid off. The Earnings Impairment Additur sought to approximate lost earnings capacity by comparing each class member's earnings after leaving Continental to the amount that class member would have earned at Continental had he not been laid off. Every member of the class received some amount as a Basic Award, and most members also received an Earnings Impairment Additur.

Applying the two formulas, Mr. Hemelt received a total award of $31,480, the combination of a $24,500 Basic Award and a $6,980 Earnings Impairment Additur. Continental withheld a portion of this award to cover its share of FICA and FUTA taxes. Continental also withheld federal and state income taxes and the employee's share of FICA taxes totaling $8,083.62, making the Hemelts' net proceeds from the settlement $20,613.09. Mr. Schell received a $58,124 Basic Award and a $16,744 Earnings Impairment Additur for a total award of $74,868. This amount was reduced by Continental's share of FICA and FUTA taxes, a contribution to a qualified pension plan, and a $15,502.20 deduction for federal and state income taxes and the

3

employee's share of FICA taxes, resulting in a net award of $42,068.03.

In December 1993, the Hemelts and the Schells both sought refunds of the federal income taxes and FICA taxes they had paid on the settlement award in the 1992 tax year. They argued that since the settlement payments aimed to compensate them for personal injuries, including the anxiety and stress caused by their illegal layoff, the amounts should be excluded from income for tax purposes and should not be considered wages under FICA. The IRS disallowed the claims. Taxpayers then sued for refunds, maintaining that the settlement awards should be excluded from their gross income under section 104(a)(2) of the I.R.C. because they were received as settlement of claims for personal injury damages. As such, taxpayers further contended, the awards were not "wages" for the purpose of FICA taxation.

The district court determined that the settlement awards did not fit within the section 104(a)(2) exclusion of "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness." See Hemelt v. United States, 951 F. Supp. 562, 568 (D. Md. 1996). The court found that the Supreme Court's decision in Mertens foreclosed a ruling that the McLendon suit was an "action based upon tort or tort type rights," which is a necessary element of the test for excluding the awards from income under I.R.C. section 104(a)(2). 26 C.F.R. § 1.104-1(c); see also Commissioner v. Schleier, 115 S. Ct. 2159, 2167 (1995). Granting the United States' motion for summary judgment in full, the district court also held, without discussion, that FICA wage taxes were properly withheld from the awards. Taxpayers now appeal.

II.

In order to claim the exemption from federal income taxation provided in I.R.C. section 104(a)(2), taxpayers seek to characterize the awards they received as satisfaction of tort-like claims for personal injury. The Supreme Court has squarely rejected this characterization by interpreting section 502(a) of ERISA to provide only for equitable relief, not for tort-like compensatory damages. Mertens, 508 U.S. at

4

258-59. Taxpayers deny that <u>Mertens</u> controls this case. They further argue that the parties' and the Special Master's belief that the <u>McLendon</u> settlement would provide damages for personal injuries controls the characterization of the awards.\* We reject these attempts to avoid the <u>Mertens</u> decision.

A.

Taxpayers are right to insist that the tax treatment of the settlement payments at issue in these cases turns on the nature of the claims at issue in <u>McLendon</u>. What they fail to recognize is that <u>Mertens</u> is dispositive of that question.

The <u>McLendon</u> plaintiffs alleged that Continental's layoff practices violated section 510 of ERISA, which makes it "unlawful for any person to discharge . . . a participant . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Thus, they sued under section 502(a), the civil enforcement provision of ERISA. Section 502(a) provides, in relevant part:

> A civil action may be brought --
>
> . . .
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. . . .

_____

\*This argument swayed the Fifth Circuit to award an income tax refund to another member of the <u>McLendon</u> class based on the section 104(a)(2) exclusion. <u>Dotson v. United States</u> , 87 F.3d 682 (5th Cir. 1996). However, like the district court, we agree with the dissenting judge in <u>Dotson</u> that Supreme Court precedent dictates a contrary result. <u>See id.</u> at 690 (Smith, J., dissenting).

29 U.S.C. § 1132(a)(3).

In Mertens the Supreme Court plainly held that personal injury damages are not contemplated by section 502(a)(3) of ERISA, which authorizes suits only for injunctive relief and "other appropriate equitable relief" (emphasis added). The Court noted that compensatory damages are "the classic form of legal relief," and are not traditionally denominated "equitable." 508 U.S. at 255 (citations omitted). The Court also relied on the interpretation of virtually identical language in Title VII of the Civil Rights Act of 1964 in United States v. Burke, where the phrase "any other equitable relief as the court deems appropriate" was held to limit recovery to back pay, injunctions and other equitable remedies and not to allow "awards for compensatory or punitive damages." Id. (citing Burke, 504 U.S. 229, 238 (1992)). The Mertens Court further concluded that an expansive interpretation of section 502(a)(3) to include money damages would distort the statute by giving the term "equitable relief" "a different meaning [in section 502(a)(3)] than it bears elsewhere in ERISA." Mertens, 508 U.S. at 258.

By foreclosing the award of compensatory damages under ERISA section 502(a)(3), the holding in Mertens also foreclosed any assertion that the McLendon settlement falls within the 104(a)(2) exclusion. The class action award fails the basic test enunciated in Schleier for determining whether an award may fairly be characterized as personal injury damages:

> First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights"; and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness."

115 S. Ct. at 2167.

The touchstone for whether a cause of action is tort-like is the availability of compensation for the "traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages." Id. (quoting Burke, 504 U.S. at 239). As with the ADEA claim at issue in Schleier and

6

the Title VII cause of action at issue in <u>Burke</u> , ERISA actions are not designed to compensate for these intangible injuries and thus do not involve "tort or tort type rights." Perforce the taxpayers after <u>Mertens</u> are unable to satisfy "[t]he essential element of an exclusion under section 104(a)(2) . . . that the income involved must derive from some sort of tort claim against the payor." <u>Threlkeld v. Commissioner</u>, 87 T.C. 1294, 1305 (1986) (internal quotation marks omitted), <u>aff'd</u>, 848 F.2d 81 (6th Cir. 1988).

B.

Taxpayers assert that the Special Master and the parties in <u>McLendon</u> believed all along that the Settlement Plan would award personal injury damages to compensate for the plaintiffs' anxiety and emotional distress, unaware that such damages were not provided for in section 502 of ERISA. However, "the characterization of a settlement cannot depend entirely on the intent of the parties." <u>Dotson</u>, 87 F.3d at 687. Thus the possibility that the parties and the Special Master misapprehended the limited nature of ERISA remedies does not alter our characterization of the awards as taxpayers assert it should. The error of the settling parties and the Special Master was just that -- an error that was highlighted by the Supreme Court's ruling in <u>Mertens</u>.

The fact that the <u>McLendon</u> settlement predates the Supreme Court's ruling in <u>Mertens</u> does not change our conclusion: As an interpretation of the ERISA provision at issue in <u>McLendon</u>, <u>Mertens</u> must direct our disposition of taxpayers' claims. When the Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review <u>and as to all events</u>, regardless of whether such events predate or postdate our announcement of the rule." <u>Harper v. Virginia Dept. of Taxation</u>, 509 U.S. 86, 97 (1993) (emphasis added). <u>See also Rivers v. Roadway Express</u>, 511 U.S. 298, 312-13 (1994). Of course we cannot go back in time and correct the parties' and the Special Master's misapprehension about the nature of the <u>McLendon</u> settlement. But today's application of <u>Mertens</u> is no attempt at hindsight. We are simply giving effect to the Supreme Court's enunciation of what ERISA means and always has meant, notwithstanding the contrary expectations of the

7

McLendon Special Master and parties. Thus the "retroactivity" of Mertens is not at issue here, as "[i]t is only when the law changes in some respect that an assertion of nonretroactivity" may even be considered. James B. Beam Distilling Co. v. Georgia , 501 U.S. 529, 534 (1991).

Mertens cannot be said to have changed the law. Nor, as the district court observed, can it be said that Mertens' interpretation of ERISA was unforeseeable. Mertens simply confirmed the plain meaning of the statutory reference to "other appropriate equitable relief" in section 502(a)(3) of ERISA. And the result in Mertens was foreshadowed by Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134 (1985). Russell focused on ERISA section 502(a)(2), which refers generally to "appropriate relief." Even though section 502(a)(2) is not explicitly limited to equitable relief, the Supreme Court read this section not to authorize "extracontractual" compensatory or punitive damages. Id. at 144. Although at the time the McLendon settlement was finalized, in July 1992, one federal appeals court had found "extracontractual" damages (i.e., compensation for personal injury) recoverable under section 502(a)(3), Warren v. Society Nat'l Bank, 905 F.2d 975, 982 (6th Cir. 1990), most courts of appeals, including this one, had followed Russell and held that such claims were not authorized by ERISA. E.g., Powell v. Chesapeake & Potomac Tel. Co., 780 F.2d 419, 424 (4th Cir. 1985); Reinking v. Philadelphia American Life Ins. Co., 910 F.2d 1210, 1219-20 (4th Cir. 1990); Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821, 825 (1st Cir. 1988); Sommers Drug Stores Co. v. Corrigan Enterprises, 793 F.2d 1456, 1462-65 (5th Cir. 1986); Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 696 (6th Cir. 1989); Kleinhans v. Lisle Sav. Profit Sharing Trust, 810 F.2d 618, 626-27 (7th Cir. 1987); Sokol v. Bernstein, 803 F.2d 532, 534-38 (9th Cir. 1986); United Steelworkers of America v. Connors Steel Co., 855 F.2d 1499, 1509 (11th Cir. 1988). Thus the Special Master and parties in McLendon should have known that their characterization of the settlement awards as extracontractual compensatory damages was legally dubious.

Even without Mertens to guide our disposition of these refund claims, we would be drawn to the same result by "the default rule of statutory interpretation that exclusions from income must be narrowly

8

construed." Burke, 504 U.S. at 248 (Souter, J., concurring). See United States v. Centennial Savings Bank FSB, 499 U.S. 573, 583 (1991); Commissioner v. Jacobson, 336 U.S. 28, 49 (1949). That canon would have special force in cases like these. Taxpayers have already received one substantial benefit to which they were not entitled under law, namely the award of large sums of money for emotional and intangible injuries that ERISA section 502 does not compensate. Thus, the decision to deny them a double windfall by denying a refund of the income taxes paid is a sound one.

III.

Taxpayers also seek a refund of their FICA taxes. They argue that, however the ERISA settlement awards might be characterized, they are not "wages" under FICA.

We disagree. The language in the Internal Revenue Code and the Treasury Regulations relevant to taxpayers' FICA refund claims is expansive, and the settlement payments fit easily within FICA's broad definition of "wages" as "all remuneration for employment unless specifically excepted," 26 C.F.R. § 31.3121(a)-1(b); see I.R.C. § 3121(a). The I.R.C. broadly defines "employment" to include "any service, of whatever nature, performed (A) by an employee for the person employing him," I.R.C. § 3121(b). The Supreme Court has emphasized the inclusive nature of this definition:

> The very words "any service . . . performed . . . for his employer," . . . import breadth of coverage. They admonish us against holding that "service" can be only productive activity. We think that "service" as used by Congress in this definitive phrase means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer.

Social Security Board v. Nierotko, 327 U.S. 358, 365-66 (1946). The ERISA claims at issue in McLendon related directly to taxpayers' employment relationship with Continental, and thus the awards constitute "remuneration for employment" within the meaning of FICA.

9

Further, we have already seen that employees suing their employer under section 502(a)(3) of ERISA cannot recover "extracontractual" or tort-like damages. See Mertens, supra . Instead, payments based on section 502(a)(3) claims, like claims under Title VII and the ADEA, are analogous to, and were designed to approximate, recovery for lost wages and other economic harms. By holding that ERISA section 502(a)(3) only permits equitable relief, of which lost wages and other economic harms are a major component, Mertens reinforces our conclusion that the settlement payments at issue here are wages.

The method used to calculate the awards here further supports the view that the settlement payments are properly characterized as wages. The two components of the settlement awards were based directly on taxpayers' employment relationship with Continental; key factors in determining the amounts of each award were the length of each employee's tenure with Continental and the salary he received from Continental. Thus, because the payments from Continental to taxpayers and other class members arose out of their employment relationship, they fit within the statutory and regulatory definition of wages, and FICA taxes were properly withheld from the awards.

Notwithstanding the above factors, taxpayers contend that the settlement payments are damages for emotional distress and thus cannot constitute wages. The answer to this question, however, is the same answer that we gave to taxpayers' contention that the settlement payments were emotional distress payments and thus were not taxable income. Mertens forbids recovery under section 502 of ERISA for emotional and intangible injuries and thus forbids the characterization of the settlement payments that taxpayers seek. If it forbids that characterization for income tax purposes, Mertens must forbid that same characterization for FICA purposes as well.

Either the settlement payments are tort-based awards, or they are wage-based equitable relief. It is clear that the payments must be both income and wages, or they must be neither. They cannot be six of one, half-dozen of the other. The Fifth Circuit majority, for example, believed the payments were not wages because they were not income. Dotson, 87 F.3d at 689-90; see also Rowan Cos. v. United States, 452 U.S. 247, 254-58 (1981) (tax statutes favor a consistent definition of wages for both FICA purposes and for purposes of income tax with-

10

holding). We agree, however, with the district court that the Commissioner's characterization of these payments as income was correct and that Mertens would perforce require treatment of the payments as wages.

Taxpayers next argue that part of the payments they received represented interest on which FICA taxes are not due and that thus they should receive a refund of that portion of the FICA taxes they paid on this putative interest component. Taxpayers are correct to insist that interest payments are not generally wages for FICA purposes, see, e.g., Rev. Rul. 80-364, 1980-2 C.B. 294 (interest awarded by court in connection with claim for back pay is not "wages" under FICA). But the interest component of a settlement can only be excluded from wages for FICA purposes if it has been separately identified. Id. (where employer paid back wages pursuant to court order that "did not indicate that a portion of the award was attorney's fees or interest," "the full amount of the award is . . . wages for federal employment tax purposes") (emphasis added). See also Melani v. Board of Higher Education, 652 F. Supp. 43, 48 (S.D.N.Y. 1986), aff'd, 814 F.2d 653 (2d Cir. 1987). While the amount paid by Continental might have included (and earned) interest, no amount was segregated from or within the settlement fund or separately identified either in the lump sum or in the payments made to each class member. As a result, there is no way taxpayers can identify what amount of the awards at issue here represents interest. Thus, the attempt to shield this component from wage taxes fails.

Taxpayers' final claim, that the payments they received should be allocated to the years to which they are attributable and taxed at the rate prevailing in each of those years, is also meritless. It is clear under the Treasury Regulations that "wages" are to be taxed for FICA purposes in the year in which they are received. See 26 C.F.R. § 31.3121(a)-2(a) ("In general, wages are received by an employee at the time that they are paid by the employer to the employee."). Furthermore, taxpayers have provided no evidence of how they would have us allocate their awards among the years to which they are supposedly attributable (not to mention the awards of the other five thousand class members). Thus, we could not undertake such allocation even if we were allowed to do so, and FICA taxes were properly with-

held from the settlement awards at the time they were paid to the tax-payers.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

12