Leona **TROTTER**, Joan Smith, Honorio Perez, Joanne Autry, Marilyn Gilliam, Samantha Michelle Jones, Diana Webster, William Harley, and Billie Jo Smiling, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**PERDUE FARMS, INC.**, and Retirement and Benefits Committee of the Perdue Supplemental Retirement Plan, Defendants.

No. CIV.A.99–893–MPT.

United States District Court, D. Delaware.

Feb. 25, 2003.

 

Gary W. Aber, Esquire, Heiman, Aber, Goldlust & Baker, Wilmington, R. Bruce McNew, Esquire, Taylor & McNew, Greenville. Of Counsel: James M. Finberg, Esquire, and Hector D. Geridon, Esquire, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, California; Joseph M. Sellers, Esquire, Christine E. Webber, Esquire, and Charles E. Tompkins, Esquire, Cohen, Milstein, Hausfeld & Toll, Washington, D.C.; Jeffrey Lewis, Esquire, and Todd F. Jackson, Esquire, Sigman, Lewis & Feinberg, P.C., Oakland, California; Debra Gardner, Esquire, Public Justice Center, Baltimore, Maryland; Francis J. Collins, Esquire, Kahn, Smith & Collins, P.A., Baltimore, Maryland; counsel for individual and rep-

resentative plaintiffs and the class and subclasses.

Kathleen McDonough, Esquire, Potter Anderson & Corroon, Wilmington. Of Counsel: Jacob J. Modla, Esquire, Haynsworth, Baldwin, Johnson & Greaves, LLC, Charlotte, North Carolina; Thomas M. Christina, Esquire, Haynsworth, Baldwin, Johnson & Greaves, LLC, Greenville, South Carolina; James J. Kelly, II, Esquire, Morgan, Lewis & Bockius LLP, Washington, D.C.; counsel for defendants, Perdue Farms, Inc. and the Retirement Benefits Committee of the Perdue Supplemental Retirement Plan.

### *MEMORANDUM*

THYNGE, United States Magistrate Judge.

## I. INTRODUCTION

Pursuant to Section IV(d) of the Stipulation and Agreement of Settlement of August 5, 2002 (hereinafter "the Agreement"), Plaintiffs have requested a ruling as to the tax treatment of the $5,000 payment to each of the eight Representative Plaintiffs. *D.I.* 257 at 15. Pursuant to the Agreement, "on any such motion, the parties will be limited to one letter brief of no more than three pages, and will not request oral argument, and the determination of the Magistrate Judge will not be subject to Appeal." *Id.* Letter briefs were submitted on September 19, 2002, on behalf of the Plaintiffs, and on October 3, 2002, for the Defendants. *D.I.* 267 and *D.I.* 276, respectively. On October 17, 2002, a Final Fairness Hearing was held and the motions for final approval of the proposed settlement and for an award of attorneys fees and reimbursements of costs were granted with the understanding that the court reserved judgment on the final issue of whether or not the payments to Representative Plaintiffs were consid-

ered wages for withholding tax purposes. *D.I.* 293 at 44.

## II. BACKGROUND

The Agreement deals with the settlement of a class action suit in which backpay and certain retirement benefits will be allocated to various class members based on hours worked and years of service. *See* Plan of Allocation, *D.I.* 254, Exhibit A–2 at 1. Furthermore, the eight Representative Plaintiffs "shall receive $5,000 each (for a total of $40,000)." *Id.* During the Final Fairness Hearing, the court stated that awards for "services of a Class Representative can be appropriate when the named plaintiff can demonstrate the risk the named plaintiff took undertaking the action, any additional burdens by the named, but not unnamed Class Members, and the benefits generated to Class Members by the named plaintiffs efforts." *D.I.* 293 at 9. In answer to the question from the court on what was undertaken by the named plaintiffs to warrant the award, plaintiffs' counsel advised that the named plaintiffs responded to interrogatories, provided documents, answered questions regarding defendants' arguments throughout the course of the litigation, and undertook risk by stepping forward and becoming a party, unlike the other Class Members. *Id.* Pursuant to the Final Fairness Hearing, the settlement award was made in the aggregate with the determination of the allocation to be made pursuant to the Agreement. *Id.* at 40–41.

## III. POSITIONS OF THE PARTIES

Plaintiffs argue that the $5,000 payments to the Class Representatives for their services to the Class are not wages and, thus, would not be subject to withholding or payroll taxes. Their contention is based on an opinion letter submitted from their tax advisor dated September 19, 2002. *D.I.* 293. The opinion letter stipulates that this is "a wage case in which Class Members will receive payments characterized as back-wages." [1] Plaintiffs argue that the distinction between taxable wages and non-wage payments is critical and that the additional incentive payment to the Class Representatives is income, but not wages. Plaintiffs assert that the services of the Class Representatives were not rendered to the employer but to the Class, which would usually be adverse to the employer. They conclude that the payments would thus not be "remuneration for employment," as defined in the Internal Revenue Code sections (hereinafter the "Code") relating to employment withholding taxes, specifically, I.R.C. § 3401(a), 3121(a), and 3306(b). Plaintiffs rely on *Cent. Ill. Pub. Serv. Co. v. United States,* 435 U.S. 21, 98 S.Ct. 917, 55 L.Ed.2d 82 (1977), as the primary judicial authority for the definition of wages. In *Cent. Ill. Pub. Serv. Co.,* the Supreme Court held that lunch reimbursements for employees on non-overnight company travel did not constitute "wages" for purposes of the withholding tax provisions, and, thus, were not subject to withholding. Plaintiffs contend that "wages" for withholding purposes should be construed narrowly as evidenced in the *Cent. Ill. Pub. Serv. Co.* case, and that the services provided by the Class Representatives were for the Class and not for the employer.

Plaintiffs also cite a number of rulings and cases giving examples of various payments that were not considered wages, but admit that they were unable to find any Internal Revenue Service (hereinafter "IRS") pronouncement or case directly on point addressing the interpretation of

---

**1.** *D.I.* 267 at 2. The opinion letter states that these payments are considered wages, that they will be reported on W–2 forms and applicable amounts will be withheld.

wages in the context of an incentive payment. *D.I.* 267 at 3–5.

Defendants argue that the underlying claims in this case were for back wages, that there was no claim by the named plaintiffs for services provided to the Class Members, and that the $5,000 payment should be considered "wages" with the applicable withholdings. In determining the tax treatment of payments received pursuant to a settlement, both defendants and plaintiffs direct the court to *Hort v. Comm'r,* 313 U.S. 28, 30–31, 61 S.Ct. 757, 85 L.Ed. 1168 (1941), and *United States v. Gilmore,* 372 U.S. 39, 49–50, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963), in which both matters found that the determination should be based on the nature of the underlying claim for which the payments are a substitute. Both parties agree that settlement payments for the wage claims are "wages" subject to all applicable withholding taxes. Defendants assert, however, that the $5,000 payment to the named plaintiffs was not a separate payment for services to the Class, that there was no allocation of a separate amount identified as non-wages, and that there was no evidence that Perdue would compensate the named plaintiffs for suing it. Defendants argue that the $5,000 payment was part of the overall settlement for the wage and retirement benefit claims, and should be construed as the Class agreeing to award a higher proportion of the settlement to the named plaintiffs in recognition of their services on behalf of the Class.

## IV. LEGAL PRINCIPLES

Pursuant to I.R.C. § 61(a)(1), gross income is defined as all income from whatever source derived, unless excluded by law, including (but not limited to) compensation for services, including fees, commissions,

fringe benefits, and similar items. I.R.C. § 104(a)(2) provides for a number of exceptions not at issue here.

If settlement payments are considered wages, applicable federal employment taxes are imposed and are required to be withheld. I.R.C. § 3402(a)(1). "Wages" are broadly defined as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash," under I.R.C. §§ 3121(a) and 3306(b), relating to the Federal Insurance Contributions Act ("FICA") and the Federal Unemployment Tax Act ("FUTA"), respectively, and pursuant to I.R.C. § 3401(a) for withholding purposes. Employment is further defined under those Code sections as "any service, of whatever nature, performed by an employee for the person employing him." The Supreme Court has emphasized the inclusive nature of this definition:

> The very words "any service … performed … for his employer," … import breadth of coverage. They admonish us against holding that "service" can be only productive activity. We think that "service" as used by Congress in this definitive phrase means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer.

*Soc. Sec. Bd. v. Nierotko,* 327 U.S. 358, 365–366, 66 S.Ct. 637, 90 L.Ed. 718 (1946).

Although, the IRS is not necessarily bound by the allocations contained in settlement agreements to which it was not a party,[2] it will allocate lump sum payments using the best evidence available. Rev. Rul. 75–230, 1975–1 C.B. 93 and Rev. Rul. 85–98, 1985–2 C.B. 51. In *Hemelt v. United States,* 122 F.3d 204, 208 (4th Cir.1997)

---

**2.** See *Robinson v. Commissioner,* 102 T.C. 116, 1994 WL 26303 (1994), *rev'd in part* on other grounds, 70 F.3d 34 (5th Cir.1995), *cert.*

denied 519 U.S. 824, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996).

(citing *Dotson v. United States,* 87 F.3d 682, 687 (5th Cir.1996)), the court held that the "characterization of a settlement cannot depend entirely on the intent of the parties." However, *Dotson* further held that

> when the legal classification of settlements is unclear, "we must look to various factors, including the allegations in the State court pleadings, the evidence adduced at trial, a written settlement agreement, and the intent of the payer." This additional evidence of the nature of settlement helps to insure the good faith of the taxpayer/party. Just as courts must engage in this evidentiary inquiry when they determine the allocation of settlement damages to various possible claims, they must also characterize the claims the parties, in good faith, *intended to settle for.* (citation omitted) (emphasis added).

*Id.* at 687–688.

In determining whether the amount received in settlement of a dispute is remuneration for employment, and, thus, subject to withholding, various courts and the IRS have looked to the nature of the item for which the settlement is a substitute. In *Alexander v. Internal Revenue Serv.,* 72 F.3d 938, 942 (1st Cir.1995), the court held that

> the classification of amounts received in settlement of litigation is to be determined by the nature and basis of the action settled, and amounts received in compromise of a claim must be considered as having the same nature as the right compromised .... These two considerations lead us to our test: it "is not whether the action was one in tort or contract but rather the question to be asked is '[i]n lieu of what were the damages awarded?'" (citations omitted).

In *Hort v. Comm'r,* 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168 (1941), the Supreme Court held that the amount received upon cancellation of a lease was equivalent to the rent which would have been paid under the lease, and was taxable as ordinary income. Rev. Rul. 96–65, 1996–2 C.B. 6 held that payments received in satisfaction of a claim for denial of a promotion based on employment discrimination were both income and wages. Rev Rul. 72–268, 1972–1 C.B. 313, as explained in Priv Ltr. Rul. 96–01–003 (Sept. 25, 1995), concluded that certain amounts of unpaid minimum wages and unpaid overtime compensation restored by a company to its employees were considered wages, but that the liquidated damages paid were not wages, as they represented an additional penalty. Rev. Rul. 72–341, 1972–2 C.B. 32 held that payments received in satisfaction of a claim for compensation, that would otherwise have been received but for the employer's unlawful discriminatory practices, were considered remuneration for services and determined to be wages for withholding purposes.

Rev. Rul. 80–364, 1980–2 C.B. 294 provided three examples illustrating the treatment of interest and attorney's fees awarded by a court in connection with a claim for back pay. The first two examples dealt with an individual suing his employer for back pay. Where the amount awarded was specifically allocated as back pay, attorney's fees, and interest, the amount for back pay was considered income and wages subject to employment tax, and the attorney's fees and interest were not wages. Where there was no specific allocation, the entire amount was considered income and wages subject to withholding. In the third example, claims were filed by a union on behalf of its members against a company. The subsequent settlement agreement provided for a fund from which the union deducted attorney's fees as an expense for enforcement of the contract and was not includable as income to the employees. The remainder was allocated

to employees as back pay and was considered income and wages for withholding purposes.

Whether the amounts paid result from a judgment of a court or in accordance with a stipulation or a settlement reached between the parties is irrelevant to the characterization of the payments. Rev. Rul. 72–268, 1972–1 C.B. 313.

In Priv. Ltr. Rul.2003–03–003 (Jan. 17, 2003), a settlement agreement was reached following a class action suit based on employment discrimination for back pay, other lost compensation, and various other damages. The allocation of damages stipulated in the settlement agreement was based on various economic considerations, including work performed on the class action lawsuit. Although the settlement agreement stated that all payments made represented compensatory damages and not wages, the IRS concluded that this statement was inconsistent with the economic substance of the settlement. The ruling determined that the underlying cause of action and the calculation of damages in the settlement agreement were based solely on economic considerations and that the underlying claim was a "wage-based claim." Furthermore, the ruling concluded that

> the settlement agreement specifically allocate[d] payments based on economic factors, such as, lack of promotions, lack of wage increases, undeserved discipline and *work on the class action lawsuit, inter alia.* Additionally, the number of years of service [was] a factor in determining the amount of the payment to each member of the class. (emphasis added).

The ruling held that the entire payment was remuneration for services and constituted wages subject to withholding taxes. *Id.*

## V. DISCUSSION

The parties agree that the wage based claims and the incentive payments are includable in the gross income of the recipients. The remaining question is whether or not the incentive payments are considered "wages" for employment tax purposes.

Plaintiffs argue, citing *Cent. Ill. Pub. Serv. Co.,* 435 U.S. at 29–30, that "wages" for withholding purposes should be construed narrowly. In *Cent. Ill. Pub. Serv. Co.,* the issue was whether reimbursements for lunch expenses incurred by employees during day trips, as opposed to overnight travel, should be considered wages and subject to withholding. The Supreme Court clarified that the overnight rule was consistently adhered to for income tax liability, but, that the overnight rule was consistently absent from the regulations with respect to withholding. *Id.* at 30. The Supreme Court referred to a narrow interpretation of the withholding provisions in that context.

Both parties recognize that the services rendered by the Class Representatives were for the benefit of the Class and not for the benefit of the employer. *D.I.* 267 at 3, *D.I.* 276 at 2. Plaintiffs, however, argue that since these services are not within the common law relationship of master-servant and that the relationship has acquired a character of its own, the incentive award should not be viewed as remuneration of services to the employer or, in other words, wages. *D.I.* 267 at 3. Defendants, on the other hand, assert that no separate claim was made by plaintiffs for their representation of the Class and that the claims were all based on back pay and retirement benefits derived from that back pay. Furthermore, defendants argue that there was no intention on their part to compensate the named plaintiffs for suing Perdue and that there was no separate

amount identified as non-wages. *D.I.* 276 at 2.

The $5,000 incentive payment to the Class Representatives was not specifically characterized in the Plan of Allocation. *D.I.* 254, Exhibit A–2 at 1. As outlined above, various courts and the IRS have looked to the nature of the underlying claim to determine whether payments in a settlement are to be considered "wages." Plaintiffs, themselves, have stated that this is a "wage case in which Class Members will receive payments characterized as back-wages." *D.I.* 267 at 2. Analogous to Priv. Ltr. Rul.2003–03–003 discussed previously herein, the settlement agreement in the instant case specifically allocated payments based on economic factors. Included in the economic factors described in Priv. Ltr. Rul.2003–03–003 were payments to Class Members based on hours worked, years of service, and "work on the class action lawsuit." The ruling determined that the entire payment was remuneration for services and constituted wages subject to withholding taxes. *Id.* Pursuant to the Plan of Allocation in this case, the amount received by each Class Member, including the Class Representatives, is based on hours worked and years of service. *D.I.* 254, Exhibit A–2 at 1. The Class Representatives would not have received any payments if they had not been employed and met the requirements of one of the classes outlined in the Plan of Allocation. *Id.* Their services are an integral component of the "entire employer-employee relationship." *See Soc. Sec. Bd. v. Nierotko,* 327 U.S. at 365.

Furthermore, all parties agreed during the Final Fairness Hearing, that the settlement award was to be in the aggregate with the determination of the allocation to occur according to the Agreement. *D.I.* 293 at 9. Similarly, in the examples in Rev. Rul. 80–364, the settlement had not been specifically allocated, but the underlying claims were wage-based and the award was considered income and wages.

Given that the Agreement allocated payments based on economic factors, the nature of the underlying claims is to be construed as wage-based, and the award is for remuneration for services and thus subject to withholding. Rev. Rul. 96–65, 80–364, 72–268, 72–341; Priv. Ltr. Rul. 96–01–003, 2003–03–033.

## VI. CONCLUSION

For the reasons stated herein, the $5,000 incentive payments to the Class Representatives are "wages" includable in gross income and subject to employment tax withholding.

An Order consistent with this opinion shall follow.