889 A.2d 489

AMALGAMATED TRANSIT UNION, LOCAL 1317, PLAINTIFF,
v. DECAMP BUS LINES, INC., DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

Decided August 19, 2005.

*John A. Craner,* for the plaintiff, Amalgamated Transit Union, Local 1317 (*Craner, Satkin & Scheer, P.A.,* attorneys).

*Mark E. Tabakman,* for the defendant, De Camp Bus Lines, Inc. (*Grotta, Glassman & Hoffman, P.C.,* attorneys).

GOLDMAN, J.S.C.

Plaintiff, Amalgamated Transit Union, Local 1317 (Local 1317), and defendant, De Camp Bus Lines, Inc., (DeCamp), are parties to a collective bargaining agreement. Local 1317 brought this action to confirm an arbitration award in favor of Rinaldo Torres (Torres), a bus driver DeCamp had suspended. Four years earlier Torres had been robbed at gunpoint while driving a bus and suffered from post-traumatic stress syndrome. In April of

2004, a $33,000 settlement of his workers compensation case was proposed. DeCamp suspended Torres, claiming that the medical evidence justifying the proposed settlement demonstrated Torres' unfitness for duty as a bus driver. After exhausting all grievance procedures, the matter proceeded to arbitration on July 29, 2004. On August 6, 2004, the arbitrator ruled that Torres should be reinstated and awarded back pay. DeCamp asserts that he returned to work on August 11, 2004, as a cleaner, and restored to his position as a bus driver on September 8, 2004, following medical clearance; however, Local 1317 disputes these dates and the appropriate pay between them.

■ The court remanded the matter to the arbitrator for calculation of the gross back pay awarded Torres under the arbitration award based upon the parties' disputes over the dates of Torres' suspension, his return to work, and the pay Torres received upon his initial return to work. The court is aware that *Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc.,* 135 *N.J.* 349, 640 *A.*2d 788 (1994), suggests that such a remand is not in accordance with *N.J.S.A. 2A:24–1,* the former arbitration statute now superseded by *N.J.S.A.* 2A:23B–1.[1] This case, however, is a labor arbitration and *Tretina,* in distinguishing the cases cited by the dissent, explained that labor arbitrations are much different than the commercial arbitration involved there. *Tretina Printing, Inc., supra,* 135 *N.J.* at 362–64, 640 *A.*2d 788. As *Tretina* explained, citing *Jersey City Police Officers Benevolent Ass'n v. City of Jersey City,* 257 *N.J.Super.* 6, at 11, 607 *A.*2d 1314 (App.Div.1992),

---

[1] *N.J.S.A.* 2A:23B–1, *et seq.* contains provisions that were not in effect when *Tretina* was decided. Because this is a labor arbitration, there is no need to decide if *Tretina* is thereby undermined. *N.J.S.A.* 2A:23B–20(d) might authorize remand in broader circumstances than *Tretina* contemplated. In addition, *N.J.S.A.* 2A:23B–21(b) and (d) contain new provisions regarding attorney's and arbitrator's fees. Neither party has suggested that the new act should be applied here. *N.J.S.A.* 2A:23B–3(a) (new act applies only to agreements made after January 1, 2003); *N.J.S.A.* 2A:24–1.1 (old act continues to apply to "an arbitration or dispute arising from a collective bargaining agreement or a collectively negotiated agreement.").

where, in a labor arbitration, an issue has not been submitted to nor decided by the arbitrator but is necessary for calculating the final determination, it is proper to remand that issue to the labor arbitrator. That is precisely the case here.

■ The remand is now complete. Local 1137 disputes the arbitrator's calculations saying that the arbitrator erred in determining the amount of back pay previously paid to Torres, alleging a $66.40 error; however, this is simply a factual finding, not "an evident miscalculation of figures" and does not rise to the level required to question the award. *N.J.S.A.* 2A:24–9 provides:

The court shall modify or correct the award in any of the following cases:

a. Where there was an evident miscalculation of figures or an evident mistake in the description of a person, thing or property referred to therein;

b. Where the arbitrators awarded upon a matter not submitted to them unless it affects the merit of the decision upon the matter submitted; and

c. Where the award is imperfect in a matter of form not affecting the merits of the controversy.

The arbitrator's factual findings are not subject to review by this court. The award is confirmed.

In addition to the Torres matter, this lawsuit also included a claim on behalf of Kingsley Thompson (Thompson), who an arbitrator found had been deprived of an opportunity to earn more money by driving a charter run. There was no dispute as to the calculation of Thompson's back pay award, which was $234.00.

Two other issues were raised by Local 1137. First it claimed that the back wages awarded to Torres and Thompson were not wages so that FUTA (Federal Unemployment) and FICA (Social Security and Medicare) taxes should not be deducted from any back pay award. DeCamp claims it is obliged to make appropriate payroll deductions.[2] Second, Local 1137 claimed that Torres and Thompson are entitled to interest from the date of the award.

---

2 Counsel agreed that other deductions such as those due the State of New Jersey would follow the same tax treatment as FICA and FUTA taxes. The court accepts this agreement and makes no finding that all employment taxes are necessarily treated identically.

In this opinion, which expands upon an earlier opinion rendered prior to the remand, the court decides that the back pay awards to Torres and Thompson are subject to deductions for FUTA, FICA, other employment taxes and withholding and that interest from the date of the award should be allowed at the post-judgment rate set forth in *R.* 4:42–11(a)(ii).

The facts necessary to resolve the reserved matters are uncomplicated. Torres was suspended, made a grievance under the labor contract, and prevailed in arbitration when the arbitrator found his suspension wrongful. Thompson was wrongfully deprived of the opportunity for extra pay for a charter run. Torres was reinstated and awarded back wages for the period of his wrongful suspension. Thompson was awarded the pay differential that he was denied. Relying on *Sang–Hoon Kim v. Monmouth Coll.*, 320 *N.J.Super.* 157, 726 *A.*2d 1017 (Law Div.1998) (hereafter "*Kim*"), Local 1317 contends that Torres and Thompson are entitled to the gross award, albeit taxable for income tax purposes, without deducting FUTA, FICA and other taxes.

In *Kim,* the plaintiff was a college professor who Monmouth College terminated. He claimed that Monmouth College fired him because of his national origin and that such termination was a violation of the contract with the faculty union. The jury awarded damages under his discrimination claim but found no cause on the contract claim. *Kim* ruled that the back pay was not wages paid to an employee, and employment taxes need not be deducted from the award.

Local 1317's reliance on *Kim* is misplaced. Employment taxes are payable only when wages are paid to an employee. At the time of the payment, the plaintiff in *Kim* was not an employee as he had been fired five (5) years before the jury award and never rehired. *Kim* explained that:

> In this case, damages were awarded for a period of time during which plaintiff was no longer employed by defendant. Plaintiff was not performing services for defendant. Furthermore, no employer-employee relationship existed, as plaintiff had been terminated and has never been reinstated.
>
> [*Kim, supra,* 320 *N.J.Super.* at 160, 726 *A.*2d 1017.]

Unlike the former employee in *Kim,* Torres and Thompson were always and remain DeCamp employees. Thompson's claim involves additional wages for a period he was also paid for other work he performed. *Kim* relied on *Lisec v. United Airlines,* 10 *Cal.App.*4th 1500, 11 *Cal.Rptr.*2d 689 (6th Dist.1992), which also involved back wages to someone no longer employed. Here, Torres and Thompson were never terminated by DeCamp and remain employed by DeCamp. Payments for back wages are being made within existing employment relationships, and employment taxes must be paid when wages are paid to an employee. *Kim* also relied upon *Churchill v. Star Enters.,* 3 *F.Supp.*2d 622 (E.D.Pa., 1998), a discrimination case under the Family and Medical Leave Act ("FMLA"), 29 *U.S.C.A.* §§ 2601 *et seq.* In *Churchill,* the "jury verdict . . . did not delineate between . . . components of plaintiff's damage. Consequently, even if withholding were otherwise appropriate, it is not possible to determine the proper amount in this case." 3 *F.Supp.*2d at 624. Keep in mind that the awards here to Torres and Thompson are purely contractual in nature. They are not awards in which lost wages are used as a basis for or as part of what are essentially tort claims such as, for example, claims under the FMLA or any law barring discrimination. An unreported trial court opinion in New York relied upon by Local 1137 is distinguishable on the same basis.

There is no question that the back pay award here constitutes wages. This has been the law at least since *Social Sec. Bd. v. Nierotko,* 327 *U.S.* 358, 66 *S.Ct.* 637, 90 *L.Ed.* 718 (1946). Joseph Nierotko was awarded "back pay" under the National Labor Relations Act because Ford Motor Company (Ford) had wrongfully discharged him for union activity. He was reinstated by the National Labor Relations Board (NLRB) and awarded "back pay." Thereafter he sought Social Security credit toward his benefits. The Supreme Court held as follows:

> While the legislative history of the Social Security Act and its amendments or the language of the enactments themselves does not specifically deal with whether or not 'back pay' under the Labor Act is to be treated as wages under the Social Security Act, we think it plain that an individual, who is an employee under the

Labor Act and who receives 'back pay' for a period of time during which he was wrongfully separated from his job, is entitled to have that award of back pay treated as wages under the Social Security Act definitions which define wages as 'remuneration for employment' and employment as 'any service * * * performed * * * by an employee for his employer.'

*[Social Sec. Bd. v. Nierotko, supra, 327 U.S. at 364, 66 S.Ct. at 641, 90 L.Ed. at 724.]*

The Supreme Court further explained that "back pay" is clearly "remuneration." It is not a fine or a penalty for an employer's wrongdoing. In response to the assertion that Nierotko performed no services for Ford for the period for which he was awarded back pay, the Supreme Court explained:

The very words "any service ... performed ... for his employer," with the purpose of the Social Security Act in mind, import breadth of coverage. They admonish us against holding that "service" can be only productive activity. We think that 'service' as used by Congress in this definitive phrase means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer.

[Id. at 365–66, 66 S.Ct. at 640–41, 90 L.Ed. at 725.]

Thus, just as Joseph Nierotko remained an employee of Ford, Torres and Thompson remained employees of DeCamp. Just as the payments to Nierotko were within his employer-employee relationship with Ford, the payments to Torres and Thompson were within their employer-employee relationship with DeCamp.

The definition of wages as "remuneration for employment" remains the same today. Under Federal Income Tax law, "the term 'wages' means all remuneration for employment...." 26 *U.S.C.A.* § 3121(a); 26 *U.S.C.A.* § 3306(b). Under Social Security law, "the term 'wages' means remuneration paid prior to 1951 which was wages for the purposes of this title [42 *U.S.C.A.* §§ 401 et seq.] under the law applicable to the payment of such remuneration, and remuneration paid after 1950 for employment." 42 *U.S.C.A.* § 409(a). *Central Illinois Pub. Serv. Co. v. United States,* 435 *U.S.*21, 98 *S.Ct* 917, 55 *L.Ed.*2d 82 (1978), cited by Local 1137, has no bearing on this case. That involves the question of whether lunch reimbursement constituted taxable wages, a totally different issue than whether back wages are wages. None of the circuit courts that have held that back wages

are wages have said that *Cent. Illinois Pub. Serv. Co. v. United States, supra,* holds otherwise. A recent case explains:

The issue in *Central Illinois* was whether an employer was required to withhold federal income tax on payments it made to its employees for reimbursement of lunch expenses. The Court held that the employer was not required to do so because there was no regulation requiring withholding on such payments and prior cases had maintained the distinction between "wages" and "income." *Central Ill.,* 435 *U.S.* at 30–32, 98 *S.Ct.* at 922–23. Essentially, the Court refused to equate "wages" with "income" for purposes of income tax withholding because "wages" is a narrower concept than "income." The Court did not, as Plaintiffs suggest, reject *Nierotko's* observation that the definition of "wages," "employment," and "any service" are worded so as to "import breadth of coverage" with regard to the determination of whether payments made in the employment context are subject to employment tax. *Nierotko,* 327 *U.S.* at 365, 66 *S.Ct.* at 641.

*[Appoloni v. United States,* 333 *F.Supp.*2d 624, 627 (D.Mich.2004).]

The inclusion of "back pay" as taxable for FICA and other employment tax purposes has also been followed in cases where the award of back pay is made under a labor agreement. In *United States v. Cleveland Indians Baseball Co.* 532 *U.S.* 200, 121 *S.Ct.* 1433, 149 *L.Ed.*2d 401 (2001), after a successful grievance, that issue was conceded. The issue presented was not whether the back pay award was subject to FICA and FUTA taxes but what year's rates should apply, the year of payment or the year for which the award was attributable. The Court held that the year of payment of the back pay under the arbitration award should be used.

Cases decided under the Employment Retirement Income Security Act (ERISA) are informative because under ERISA there are no claims for personal injuries or sickness excludable from taxable income under *I.R.C.* § 104(a)(2). *Mertens v. Hewitt Assocs.,* 508 *U.S.* 248, 113 *S.Ct.* 2063, 124 *L.Ed.*2d 161 (1993). The court will now review a series of cases decided under a settlement of an ERISA class action involving Continental Can. In *McLendon v. Continental Group, Inc.,* 749 *F.Supp.* 582 (D.N.J.1989), *aff'd sub. nom. McLendon v. Continental Can Co.,* 908 *F.*2d 1171 (3d Cir.1990), and *Gavalik v. Cont'l. Can Co.,* 812 *F.*2d 834(3d Cir. 1987), *cert. denied,* 484 *U.S.* 979, 108 *S.Ct.* 495, 98 *L.Ed.*2d 492 (1987), employees had contended that Continental Can had fired

them to avoid incurring a large pension liability. Judge Sarokin approved a class action settlement for 5000 employees totaling $415,000,000. Because individualized calculation of damages was too difficult, a formula using salary, earnings history, seniority, age, and years of service was used to determine a "Basic Award" and an "Earnings Impairment Additur." [3]

Prior to the decision in *Mertens, supra,* some authorities believed that tort personal-injury-type damages could be sought and obtained in an ERISA action. In fact, the Master in the Continental Can settlement so asserted. This ambiguity at the time of the settlement led the Fifth Circuit in *Dotson v. United States,* 87 *F.*3d 682 (5th Cir.1996) [4] to conclude that the parties' belief at the time and the interest of finality required the settlement to be excluded as income in its entirety under *I.R.C.* § 104(a)(2) notwithstanding *Mertens, supra.* This was so because the parties described the settlement as being "designed to compensate for dignitary injuries and nonpecuniary loss." This included "the stress, the stigma and the self doubt that comes with losing a well-paid job." These were characterized as the types of "traditional harms associated with personal injury." *Dotson, supra,* 87 *F.*3d at 689. In other words, like many other personal injury cases, lost wages were used as a surrogate and as a rough way of measuring a wide variety of damages for a claimed wrong. As such, the court in *Dotson* characterized the settlement payments as nontaxable under *I.R.C.* § 104(a)(2). There is no issue here as to Torres or Thompson relating to excludability under *I.R.C.* § 104(a)(2). Neither has any claim for anything remotely resembling a personal injury claim. None would be cognizable under the collective bargaining agreement. Thus, three other cases that decided the

---

[3] The difference between what the employee was earning in any new job and what would have been earned if the employee had stayed at Continental Can.

[4] In these cases Continental Can avoided any risk of tax penalties for the failure to withhold taxes by paying them. This did not prejudice the employee from seeking a refund from the government, nor does this decision prohibit Torres and Thompson from doing likewise.

issue on the question posed here are more relevant. These cases, all involving the same settlement, posed the question of whether the settlement, if characterized as "back pay" and not as a nontaxable personal injury award, would be subject to FICA and other employment taxes. While their reasoning was not always the same, all agreed that any settlement proceeds characterized as "back pay" required deductions for employment taxes and withholding.

In *Hemelt v. United States*, 122 *F*.3d 204 (4th Cir.1997), plaintiffs sought to recover taxes withheld from their portion of the settlement of the Continental Can ERISA class action lawsuit. The Fourth Circuit, relying on *Soc. Sec. Bd. v. Nierotko, supra*, explained:

> The method used to calculate the awards here further supports the view that the settlement payments are properly characterized as wages. The two components of the settlement awards were based directly on taxpayers' employment relationship with Continental; key factors in determining the amounts of each award were the length of each employee's tenure with Continental and the salary he received from Continental. Thus, because the payments from Continental to taxpayers and other class members arose out of their employment relationship, they fit within the statutory and regulatory definition of wages, and FICA taxes were properly withheld from the awards.

> [*Hemelt v. United States, supra*, 122 *F*.3d at 210.]

The Eighth Circuit in *Mayberry v. United States*, 151 *F*.3d 855 (8th Cir.1998) followed *Hemelt, supra*. However, *Gerbec v. United States*, 164 *F*.3d 1015 (6th Cir.1999), remanded the matter to the District Court when it refused to apply *Mertens* retroactively in a settled case. Because the Master had included non-physical personal injury type losses as part of the damages claim, the court in *Gerbec, supra*, remanded the matter to determine what amounts, if any, might be excludable as income under *I.R.C.* § 104(a)(2). *Gerbec* went on to say, pertinent to the case at hand:

> With respect to the portions of the award that are found on remand to be includable in income, only the amounts that fall within the definition of wages under FICA are subject to FICA taxation. We held that two separate elements of the aggregate award would be subject to income taxation: any back wages in the Basic Award and any future wages in the Earnings Impairment Additur constituting earnings impairment awarded as a result of the firing. We now hold that any

part of the award allocated on remand to either of these elements will be "wages" subject to FICA taxation.

* * *

The holding in *Nierotko* clearly supports the conclusion that awards representing a loss in wages, both back wages and future wages, that otherwise would have been paid, reflect compensation paid to the employee because of the employer-employee relationship, regardless of whether the employee actually worked during the time period in question.

[*Id.* at 1026.]

Other courts have also held that both back pay and future pay awards are subject to employment taxes in a wide variety of contexts. In *Banks v. United States*, 81 *F.*3d 874 (9th Cir.1996), the plaintiff claimed that he was wrongfully discharged by Bethlehem Steel Corporation (Bethlehem) for fighting on the job with a fellow employee. He also sued his union for violating its duty of fair representation in failing to pursue his claim diligently. After substantial litigation including a reversal and remand,[5] the case settled with payments from both Bethlehem and his union. The court held his settlement with the union was a tort-like claim on account of personal injuries and thus excludable from gross income under *I.R.C.* § 104(a)(2). On the other hand, payments from Bethlehem for back pay were subject to employment taxes. In *Abbott v. United States*, 76 *F.Supp.*2d 236 (N.D.N.Y.1999) *aff'd o.b.*, 231 *F.*3d 889 (2nd Cir.2000), *cert. den. sub nom. Miles v. United States*, 532 *U.S.* 957, 121 *S.Ct.* 1484, 149 *L.Ed.*2d 372 (2001), the court held that a lump sum payment on termination of employment covering future periods when he would not be working was subject to employment taxes. In *Appoloni v. United States, supra*, 333 *F.Supp.*2d 624, the school district offered a monetary incentive for early retirement. Teachers who elected early retirement would receive one year's salary paid in monthly installments over five years. The court held that withholding was required even though they were being paid for a period that they were not working. In *Newhouse v. McCormick & Co.*, 157 *F.*3d 582, 584–85 (8th Cir.1998) the court held that payment for dam-

---

[5] *Banks v. Bethlehem Steel Corporation*, 870 *F.*2d 1438 (9th Cir.1989)

ages in a employment discrimination case were not subject to withholding but only because the employee was never an employee. He was discriminated against in the hiring process and never hired. The court explained, however, that had he ever been an employee, the amounts received for back pay would have been subject to withholding.

The key question in this appeal is whether Newhouse's front and back pay awards constitute "wages," thus triggering a withholding requirement on the part of McCormick. The Internal Revenue Code provides that "every employer making payment of wages shall deduct and withhold upon such wages a tax determined in accordance with tables or computational procedures prescribed by the Secretary." 26 *U.S.C.* § 3402(a)(1) (1994). The Code defines wages broadly as "all remuneration for employment," unless specifically excepted. 26 *U.S.C.* § 3121(a); 26 *C.F.R.* 31.3121(a)–1 (1998). "Remuneration for employment" constitutes wages regardless of the name by which it is designated and even though the employer and employee relationship no longer exists at the time the remuneration is paid. 26 *C.F.R.* § 3121(a)–1(e), (i). Employment "means any service, of whatever nature, performed ... by an employee for the person employing him." 26 *U.S.C.* § 3121(b). An employee is "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." *Id.* § 3121(d). The plain language of these statutes indicates the importance of demonstrating an employer-employee relationship in order to label an award as wages for purposes of triggering the withholding requirement.

[*Id.* at 584–85.]

In *Associated Elect. Coop., Inc. v. United States,* 226 *F.*3d 1322 (Fed.Cir.2000), the court held that voluntary "early out" incentive payments were intimately related to the employer-employee relationship, hence subject to employment taxes although the payments were made for periods during which no services were performed. In essence, the employee was being paid for not working. The same circuit held likewise regarding "exit-incentive buyout payments" from IBM. *Abrahamsen v. United States,* 228 *F.*3d 1360 (Fed.Cir.2000), *cert. den. sub.nom. Willoughby v. United States,* 532 *U.S.* 957, 121 *S.Ct.* 1484, 149 *L.Ed.*2d 372 (2001). The Second Circuit agreed in *Abbott,* supra. *Miles v. United States,* 532 *U.S.* 957, 121 *S.Ct.* 1484, 149 *L.Ed.*2d 372 (2001). In *Purdy v. Ribicoff,* 198 *F.Supp.* 812, 813 (D.N.J., 1961), the court held that money paid in settlement of Purdy's claim that he was wrongfully fired as tax collector for the Township of North Bergen and did not work were wages under Social Security. In *Trotter v.*

*Perdue Farms, Inc.,* 253 *F.Supp.*2d 812 (D.Del.2003), plaintiff received an extra payment of $5000 for being the class representative in a class action in a claim for back pay and retirement benefits. There was no dispute but that the payments to the class were subject to withholding; however, plaintiff argued that the $5000 payment for being a class representative was really for being of service to fellow class members and not the employer. The District Court disagreed. It explained that:

> "Wages" are broadly defined as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash," under I.R.C. §§ 3121(a) and 3306(b), relating to the Federal Insurance Contributions Act ("FICA") and the Federal Unemployment Tax Act ("FUTA"), respectively, and pursuant to I.R.C. § 3401(a) for withholding purposes. Employment is further defined under those Code sections as "any service, of whatever nature, performed by an employee for the person employing him."
>
> [*Id.* at 812.]

In *McGlynn v. Duke Univ.,* 165 *N.C.App.* 250, 598 *S.E.*2d 424, 426 (2004), plaintiff settled her wrongful termination claim for a lump-sum payment. When Duke University tendered payment of the settlement it deducted withholding taxes. Plaintiff claimed that these deductions breached the settlement agreement but the court held that Duke University was in fact, obligated to withhold taxes. The court held that employers are required:

> to collect the tax from the employee by deducting the amount from wages when paid. 26 *U.S.C.A.* § 3102 (2004). The term "wage" means all remuneration for employment unless specifically excepted by FICA. 26 *C.F.R.* 31.3121(a)–1(b) (2004). The designation of remuneration for employment, such as salary, fees, and bonuses, is immaterial. 26 *C.F.R.* 31.3121(a)–1(c) (2004). Remuneration continues to be considered wages even though the employer/employee relationship ended prior to the time of payment. 26 *C.F.R.* 31.3121(a)–1(i) (2004).
>
> [*Id.* at 426.]

All of these cases from 1961 through 2005 demonstrate that although *Soc. Sec. Bd. v. Nierotko, supra,* is over 60 years old, it is still valid today.

In addition, Revenue Ruling 1978–1 *C.B.* 303 (IRB, 1978), explicitly mandates withholding. In ruling on a series of payments under a Civil Rights Act Title VII consent decree, the Internal Revenue since explained that "the amount payable to

each such individual represents an agreed amount to compensate for the loss of prospective employment." Finding these payments comparable to the payments under *Soc. Sec. Bd. v. Nierotko, supra,* it held, "the payments made by the company under the Consent Decree to the affected class members are 'wages' for purposes of the Federal Insurance Contributions Act, the Federal Unemployment Tax Act, and the Collection of Income tax at Source on Wages." Even if the statute were ambiguous, the Internal Revenue Service interpretation requires deference. *United States v. Cleveland Indians Baseball Co., supra,* (Scalia, concurring), 532 *U.S.* at 222, 121 *S.Ct.* at 1446, 149 *L.Ed.*2d at 419.

To the extent that *Kim,* in *dicta,* suggests that back pay covering a period when the employee performs no actual services is not considered wages and thus not subject to employment taxes, *Kim* conflicts with *Social Sec. Bd. v. Nierotko, supra,* 327 *U.S.* at 365–66, 66 *S.Ct.* at 641, 90 *L.Ed.* at 725, which *Kim* does not mention, and is contrary to every Circuit that has considered the issue as discussed in this opinion. The California state court and the Federal District Court cited by *Kim* are the only other reported opinions to the contrary.

■ To summarize, Torres and Thompson were and still are employees of DeCamp. They were awarded and paid back pay while they had an employment relationship with DeCamp, a relationship that continues today. Payments were properly made subject to the appropriate deductions for FUTA, FICA, other employment taxes, and withholding.

Local 1317 also seeks interest on the arbitration award, but DeCamp argues that interest should be paid only if awarded by the arbitrator. Because the labor agreement was silent as to interest on back pay and because the arbitrator ordered none, DeCamp urges that none should be awarded. This argument misconceives the court's role. It is not acting as an arbitrator (hence its remand for clarification and recalculation of Torres' gross back pay award); it is merely enforcing an arbitrator's decision. The court is also informed by the practice of the NLRB

to require the payment of interest on back pay awards. *N.L.R.B. v. Int'l Measurement and Control Co., Inc.,* 978 *F.*2d 334 (7th Cir.1992).

 Citing *Ukrainian Nat. Urban Renewal Corp. v. Joseph L. Muscarelle, Inc.,* 151 *N.J.Super.* 386, 376 *A.*2d 1299 (App.Div.), (interest is proper when confirming an arbitration award), *certif. denied,* 75 *N.J.* 529, 384 *A.*2d 509 (1977). Local 1317 claims that interest at the post-judgment rate should run from the date of the award. Local 1317 concedes that the period for which it claims interest is due (from the date of the award until paid) was a very short time. As to the rate, Local 1317 asserts that the rate set by *R.* 4:42–11(a)(ii) is appropriate. This rate is appropriate because it is very close to the rate used by the NLRB in similar back pay awards. *New Horizons for Retarded, Inc. v. Professional and Commercial Employees Union,* 283 *N.L.R.B.* 1173, 125 *L.R.R.M.* (BNA) 1177, 1986–87 *CCH NLRB P* 18750, (N.L.R.B.1987) (interest on back pay awards should earn interest at the "short-term Federal rate.") There are no employment tax deductions from the interest portion of the award so long as it is separately stated. *Hemelt v. United States, supra,* 122 *F.*3d at 210; *St. Louis Cardinals L.P. v. U.S.,* 185 *F.Supp.*2d 1043 (E.D.Mo.2001).

The court will enter judgment confirming the arbitration award as made by the arbitrator after remand without change. Presumably counsel can calculate the interest, the appropriate amounts to be withheld from the gross award for withholding, and the net payment required to be made to Torres and Thompson, broken down as to gross pay, net pay, amounts withheld and transmitted to the appropriate taxing authorities, and interest.